STATE OF NORTH CAROLINA v. WILLIAM DAVIS WATKINS

No. 407A93

(Filed 29 July 1994)

## Searches and Seizures § 80 (NCI4th)— investigatory stop— reasonable suspicion of criminal activity—anonymous tip—corroboration by officer

An officer had a reasonable suspicion of criminal activity to justify an investigatory stop of defendant's vehicle where a dispatcher received an anonymous tip that there was a suspicious vehicle at a well drilling business; the officer received a transmission on an official radio frequency stating that there was a "10-50" or "suspicious vehicle" behind the well drilling company; the officer was asked for assistance by an experienced deputy sheriff; the officer observed a car moving with its lights off in the company parking lot; and the time was 3:00 a.m., the area was

generally rural, and the officer knew that the specific locale was a business which was normally closed at that time. These observations by the officer were sufficient to corroborate the anonymous tip that there was a suspicious vehicle at the locale.

**Am Jur 2d, Searches and Seizures §§ 51, 78.**

**Law enforcement officer's authority, under Federal Constitution's Fourth Amendment, to stop and briefly detain, and to conduct limited protective search of or "frisk," for investigative purposes, person suspected of criminal activity—Supreme Court cases. 104 L. Ed. 2d 1046.**

Appeal by the State pursuant to N.C.G.S. § 7A-30(2) from a decision of a divided panel of the Court of Appeals, 111 N.C. App. 766, 433 S.E.2d 817 (1993), affirming an order granting defendant's motion to suppress entered by John, J., on 1 July 1992, in Superior Court, Rockingham County. Heard in the Supreme Court 17 March 1994.

*Michael F. Easley, Attorney General, by Jeffrey P. Gray, Assistant Attorney General, for the State-appellant.*

*McNairy, Clifford & Clendenin, by Locke T. Clifford and Robert O'Hale, for defendant-appellee.*

WHICHARD, Justice.

The State appeals from a decision of the Court of Appeals affirming an order granting a motion to suppress all of the evidence obtained by a law enforcement officer pursuant to his stop of defendant's vehicle. The trial court's findings of fact were not excepted to on appeal; therefore, they are not reviewable. *Brown v. Board of Education,* 269 N.C. 667, 670, 153 S.E.2d 335, 338 (1967); *see also State v. Perry,* 316 N.C. 87, 107, 340 S.E.2d 450, 462 (1986). The trial court found that:

1. On the early morning of February 11, 1990, the defendant was on the premises of the [Virginia Carolina] Well Drilling Company, hereafter referred to as "the company," with the permission of the owner/operator of the company, his friend Elbert Smith. The Well Company is located on the [Priddy] Loop Road, and is outside the city limits of the town of Stoneville.

2. The company had a recreational area with a cable tv set and a kitchen and bar which were used at night and on weekends by Mr. Smith and his friends, including the defendant. Some of these people lived in rural areas that were not served by cable and came to the company regularly with family members and friends to watch ball games, play cards, have fish fries, etc.

3. The defendant had been a regular visitor at the company for many years and was in the habit of coming to the company on a daily basis and sometimes staying until late at night.

4. There was an auto detailing business on the premises and it was not unusual for cars to be parked around the company during night or daylight hours.

5. Mr. Smith had given keys to several of his friends, including the defendant[,] so that they could use the recreational facilities at the company whenever they chose to do so.

6. On the night in question, Officer Norman E. Harbor of the Stoneville Police Department was in his police squad car and was monitoring the Rockingham County Sheriff's Department radio frequency. The Rockingham County Sheriff's Department provides dispatch/communication services to/for the Stoneville Police Department as well as for its own department, and both agencies communicate using the same frequency.

7. At approximately 3:00 a.m. Officer Harbor overheard a radio transmission from the dispatcher to Officer Robert E. Knight saying that there was a "10-50" behind the Virginia Carolina Well Drilling Company.

8. No evidence was introduced that tended to show:

   a. The identity of the dispatcher.

   b. The identity of the caller.

   c. Whether the caller refused to identify himself/herself.

   d. What description of the vehicle the caller gave, if any.

   e. Any statements given the dispatcher by the caller to support the conclusion that it was a "10-50," or "suspicious" vehicle.

   f. Whether the dispatcher knew or recognized the caller.

   g. What, if anything, the dispatcher did to verify the believability of the caller.

h. What, if anything, the caller told the dispatcher was "suspicious" about the vehicle.

9. The "10-50" was understood by Officer Harbor to mean "suspicious vehicle[.]"

10. Officer Harbor had no idea who had made the call or whether the caller was a reasonable, believable or reliable person.

11. Officer Harbor was given no description of any alleged "suspicious vehicle" nor any information as to why any vehicle parked behind the company would be suspicious.

12. Deputy Robert Knight advised the dispatcher that he was a good distance away. Then Officer [Harbor] advised Deputy Knight of his location, which was at the Commer Road and the Settle Bridge Road, approximately five hundred feet away from the Virginia Carolina Well [Drilling] Company, and Deputy Knight asked Officer Harbor to assist him.

Officer Harbor proceeded to the company. There were "approximately" two or three vehicles on the premises when he arrived. When Officer Harbor arrived, he saw several buildings, one of which had a light on inside. He parked his car near the building with the light on and exited his car, and started toward the building.

13. Officer Harbor had driven past the Virginia Carolina Well Drilling Company on many occasions before, had seen cars parked on the premises and had never investigated any of the cars on prior occasions. Officer Harbor testified that it would be normal to see a few cars on the premises during day and night.

14. While he was outside his vehicle, he observed a car pull out of the company parking lot onto the Priddy Loop Road and drive away. The car's light[s] went on as [the car] turned onto Priddy Loop Road. There is no evidence that the defendant saw Officer Harbor before Officer Harbor turned on his blue light.

15. Officer Harbor then got in his car and followed the car turning on his blue light as he pulled out of the company parking lot and turned left onto Priddy Loop Road.

16. Officer Harbor testified that he believed that "at three o'clock in the morning" any vehicle at a "place of business that is closed normally" is a suspicious vehicle.

17. Officer Harbor testified that the car was "continually weaving" within its lane, but that "he never crossed the center line or go [sic] off the road". Officer Harbor testified that as he followed the car with the blue light on, the car was continually weaving within its lane, but that he never crossed the center line or went off the road.

18. Officer Harbor turned on his blue lights and stopped the car for the purpose of continuing his "10-50" investigation and not because of anything he observed about the defendant's driving.

19. Upon stopping the vehicle and having the driver, the defendant William Davis Watkins, exit the vehicle, Officer Harbor smelled alcohol on the defendant and asked him to perform some roadside sobriety tests, and thereafter arrested him for driving while impaired.

The single issue is whether, based on these findings, the trial court and the Court of Appeals properly concluded that Officer Harbor did not have a reasonable suspicion of criminal activity when he activated his blue light and decided to stop defendant's vehicle. We conclude that they did not, and we accordingly reverse.

The Fourth Amendment protects the "right of the people . . . against unreasonable searches and seizures." U.S. Const. amend. IV. It is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655, 6 L. Ed. 2d 1081, 1090 (1961). It applies to seizures of the person, including brief investigatory detentions such as those involved in the stopping of a vehicle. *Reid v. Georgia*, 448 U.S. 438, 440, 65 L. Ed. 2d 890, 893 (1980).

Only unreasonable investigatory stops are unconstitutional. *Terry v. Ohio*, 392 U.S. 1, 9, 20 L. Ed. 2d 889, 899 (1968). An investigatory stop must be justified by "a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." *Brown v. Texas*, 443 U.S. 47, 51, 61 L. Ed. 2d 357, 362 (1979).

A court must consider "the totality of the circumstances—the whole picture" in determining whether a reasonable suspicion to make an investigatory stop exists. *U.S. v. Cortez*, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 629 (1981). The stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training. *Terry*, 392 U.S. at 21-22, 20 L. Ed. 2d

at 906; *State v. Thompson*, 296 N.C. 703, 706, 252 S.E.2d 776, 779, *cert. denied*, 444 U.S. 907, 62 L. Ed. 2d 143 (1979). The only requirement is a minimal level of objective justification, something more than an "unparticularized suspicion or hunch." *U.S. v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10 (1989).

Here, Officer Harbor received a transmission on an official radio frequency stating that there was a "10-50" or "suspicious vehicle" behind the Virginia Carolina Well Drilling Company. Deputy Robert Knight, a five-and-one-half-year veteran on the county force, asked Officer Harbor for assistance. Officer Harbor observed a car moving with its lights off in the company parking lot. The time was 3:00 a.m., the area was generally rural, and the specific locale was a business which Officer Harbor knew to be "closed normally" at that time. These observations by Officer Harbor were sufficient to corroborate the tip that there was a "suspicious vehicle" at the locale. An anonymous tip may provide the requisite reasonable suspicion for an investigatory stop if it is corroborated by independent police work on the scene. *Alabama v. White*, 496 U.S. 325, 330, 110 L. Ed. 2d 301, 309 (1990).

Defendant argues that the facts here are similar to those in *State v. Fleming*, 106 N.C. App. 165, 415 S.E.2d 782 (1992), where the Court of Appeals held that officers acted unreasonably when they stopped and frisked a defendant merely because he had been standing in an open area between two apartment buildings and then chose to walk in a direction away from the officers. *Fleming*, however, is distinguishable, in that the officers there had only a generalized suspicion. Additionally, that incident occurred in Greensboro, an urban area, shortly after midnight, while the incident here occurred in a rural area at 3:00 a.m. The "unusual hour" is an appropriate factor for a law enforcement officer to consider in formulating a reasonable suspicion. *State v. Rinck*, 303 N.C. 551, 560, 280 S.E.2d 912, 920 (1981).

The facts of this case are comparable to those in *State v. Fox*, 58 N.C. App. 692, 294 S.E.2d 410 (1982), *aff'd per curiam*, 307 N.C. 460, 298 S.E.2d 388 (1983). The court concluded that the officer there had a reasonable suspicion justifying a stop of a vehicle proceeding slowly on a dead-end street of locked businesses at 12:50 a.m. in an area with a high incidence of property crime. The defendant, who was driving, appeared to avoid the officer's gaze. Similarly, in *State v. Tillet and State v. Smith*, 50 N.C. App. 520, 274 S.E.2d 361, *appeal dismissed*, 302 N.C. 633, 280 S.E.2d 448 (1981), the court held that an

**IN RE WARD**

[337 N.C. 443 (1994)]

investigatory stop was justified by a reasonable suspicion in that the officer there was aware of reports of "firelighting" deer in the area and he saw a car entering a heavily wooded, only seasonally occupied area at approximately 9:40 p.m.

Like the officers in *Fox* and *Tillet*, Officer Harbor had a reasonable suspicion sufficient to justify a stop of defendant's vehicle. All of the facts, and the reasonable inferences from those facts, known to the officer when he decided to make the investigatory stop, would lead a reasonably cautious law enforcement officer to suspect that criminal activity was afoot. Officer Harbor received a dispatch from an official frequency stating that there was a "10-50" or "suspicious vehicle" behind the Virginia Carolina Well Drilling Company. A veteran officer requested his assistance. Officer Harbor then saw a vehicle driving with its lights off in the parking lot of a business which was normally closed at that hour. It was 3:00 a.m. in a rural area. We conclude that when these facts are considered as a whole and from the point of view of a reasonably cautious officer on the scene, the officer had a reasonable suspicion to detain defendant for a brief investigatory stop.

Accordingly, the decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals with instructions to remand to the Superior Court, Rockingham County, for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.