STATE OF NORTH CAROLINA v. WILLIAM DAVIS WATKINS

No. COA95-258

(Filed 21 November 1995)

1. **Evidence and Witnesses § 621 (NCI4th)— motion to suppress adjudicated through appellate process—discovery of new facts—amendment of motion properly allowed**

    The trial court had the authority to grant defendant's supplemental motion to suppress on the ground of newly discovered evidence even though defendant's original motion to suppress had been adjudicated through the appellate process where it had been determined on appeal that an anonymous tip received by law enforcement and the arresting officer's observations supported a reasonable articulable suspicion to stop defendant, and defendant presented subsequently discovered evidence that the "anonymous tip" had been fabricated by the police. N.C.G.S. § 15A-975(c).

    **Am Jur 2d, Motions, Rules and Orders § 26.**

2. **Searches and Seizures § 77 (NCI4th)— anonymous tip fabricated by police—unlawful seizure—suppression of evidence proper**

    The evidence was sufficient to support the trial court's findings of fact that an "anonymous tip" was fabricated by the police chief and that through trickery he orchestrated an investigatory

stop of defendant by another officer, and such findings were sufficient to support the trial court's conclusions that the second officer did not have a reasonable articulable suspicion of criminal activity to stop defendant and that evidence obtained during the stop of defendant must be suppressed in his trial for driving while impaired.

**Am Jur 2d, Searches and Seizures § 48.**

Appeal by State from order entered 9 November 1994 in Rockingham County Superior Court by Judge Melzer A. Morgan, Sr. Heard in the Court of Appeals 24 October 1995.

*Attorney General Michael F. Easley, by Assistant Attorney General Jeffrey P. Gray, for the State.*

*McNairy, Clifford & Clendenin, by Robert O'Hale and Locke T. Clifford, for defendant-appellee.*

GREENE, Judge.

The State appeals from the trial court's 9 November 1994 order which granted William Davis Watkins' (defendant) motion to suppress evidence in his trial for driving while impaired.

Defendant was arrested and charged with driving while impaired on 11 February 1990. On 16 August 1991, defendant made a motion to suppress the evidence obtained during defendant's stop on the ground that the arresting officer did not have a reasonable articulable suspicion to stop defendant. The trial court granted defendant's motion on 1 July 1992, but the trial court's order was reversed on appeal on 29 July 1994, after it was determined that an anonymous tip received by law enforcement and the arresting officer's subsequent observations supported a "reasonable articulable suspicion" to stop defendant. *State v. Watkins*, 337 N.C. 437, 446 S.E.2d 67 (1994). Subsequently, on 12 October 1994, the defendant made a "Supplemental Motion to Suppress based on Newly Discovered Evidence." In support of his motion, the defendant submitted an affidavit by Teresa Hundley Carter (Carter) stating that the Chief of Police of Stoneville, Jerry Fowler (Fowler), whom Carter dated in 1990, "set up" the defendant on 11 February 1990.

After a hearing on the supplemental motion to suppress, the trial court found that on 10 February 1990, defendant had been at the

Virginia Carolina Well Drilling Company (Well Company) all day and at 11:30 p.m. called his wife to say that he had had too much to drink and would not be coming home. The Well Company was known by law enforcement to be a place where people in the community gathered to drink and Fowler "was having his department conduct a vigorous campaign to ferret out those motorists who drove while impaired in the Stoneville area" and Fowler knew that "defendant hung out at the" Well Company. On 10 February 1990, Fowler was "out socially" with Carter. Although Fowler was in his personal vehicle, he had his Stoneville Police walkie-talkie radio with him. After leaving Carter's home, and when the two were in the vicinity of the Well Company, Fowler "saw and recognized" defendant's vehicle, which did not have its lights on at the time. Defendant was not outside the building at any time that Fowler observed his vehicle at the Well Company. After telling Carter that the vehicle belonged to defendant, Fowler returned to Carter's home where he used the telephone and telephone book. Fowler asked Carter how the Well Company would be listed in the telephone book and then dialed and spoke into the phone, when Carter heard Fowler "tell the person on the other end that there was an emergency." The trial court further found that Fowler's call from Carter's home was to the defendant, at the Well Company, and that Fowler "without identifying himself, told the defendant there was an ambulance at the defendant's house." "This statement was false and was designed and intended to cause the defendant . . . to leave the [Well Company] and to get on the public road, so that he could be arrested for driving while impaired." After making the call to defendant, Fowler called Officer Shockley. of the Stoneville Police Department on his walkie-talkie and requested that he meet Fowler and Carter in Stoneville. During this meeting, Fowler instructed Shockley to report a suspicious vehicle behind the Well Company to the Sheriff's Department, which Shockley did. Meanwhile, defendant called home and was told by his wife that there was no ambulance, but was requested to return home. Deputy Robert Knight was dispatched by the Sheriff's Department, in response to Shockley's report, and because he was "a good distance away, Stoneville Police Officer Harbour advised that he would assist." Defendant was stopped by Harbour, upon Harbour observing defendant's vehicle leave the Well Company parking lot. Fowler and Carter rode through the area where Harbour had stopped defendant and Fowler remarked to Carter that this was Harbour's second DWI arrest.

The trial court then found that "defendant left the inside of [the Well Company], started his car and drove it on the public highway because of the trickery of the Stoneville Chief of Police, Jerry Fowler" and that "[t]he act of the former Chief of Police saying there was a suspicious vehicle at the [Well Company] and to have Officer Shockley pass that on to the Sheriff's Department dispatcher was an act done with reckless disregard of the truth."

The trial court further found that this evidence was "not available to the defendant at the original suppression hearings in 1991" and that Officer Harbour had no knowledge of Fowler's actions nor did he participate in Fowler's trickery. The trial court then concluded that:

3. The very foundation of the reasonable suspicion here, the purported anonymous tip, was manufactured by law enforcement officers. It is inappropriate to make up, create, or fabricate an anonymous tip. Such trickery is not an appropriate police practice where Fourth Amendment seizures are involved.

4. . . . [S]uch made-up tip cannot be an anonymous tip on which a warrantless stop and seizure can be made.

5. The actions of Officer Harbour are tainted, not by Officer Harbour's actions, but by the recklessly published tip from Chief Fowler.

The trial court finally ordered that "the fruits of" defendant's seizure be suppressed.

The evidence which is relevant to these findings is testimony by Carter, defendant and Fowler. The testimony of Carter and defendant is in accord with the trial court's findings.

Fowler testified that he did not see defendant's car at the Well Company when he and Carter rode by, but she did and mentioned that she "saw some tail lights." Fowler further testified that he never went back to Carter's mobile home to use the telephone, but that he did stop and ask Shockley to report a suspicious vehicle at the Well Company to the Sheriff's Department based upon Carter's statement. Fowler stated that he and Carter then went back to his apartment and never drove back by the area where Harbour had stopped defendant. Fowler testified that he did not mention to anyone in the District Attorney's office of his involvement in defendant's arrest until Carter came forward.

The issues are whether (I) the trial court had the authority to grant defendant's supplemental motion to suppress on the grounds of newly discovered evidence; (II) there is sufficient evidence in the record to support the trial court's findings of fact; and (III) whether the facts support the trial court's conclusion that "defendant's Fourth Amendment right to be free from unreasonable seizure has been violated" and its resulting suppression of the evidence obtained by the seizure.

I

[1] Although the State argues that there is no authority which allows "defendant to amend or supplement a motion to suppress where the question raised in the original motion has been adjudicated through the appellate process," our legislature has provided that "after a pretrial determination and denial of the motion" a defendant may request a new suppression hearing to present "additional pertinent facts . . . which [defendant] could not have discovered with reasonable diligence before the determination of the motion." N.C.G.S. § 15A-975 (1988). The original determination and denial of defendant's motion in the North Carolina Supreme Court relied upon the assumption that the tip to Harbour was anonymous. *See Watkins*, 337 N.C. at 442, 446 S.E.2d at 70. In his supplemental motion, defendant presented evidence that the "anonymous tip" in this case was fabricated by police. Defendant's new evidence was pertinent and presented after a pretrial determination and denial of his motion to suppress, and the State's assignment is overruled.

II

[2] Although there was testimony which would support contrary findings than those made by the trial court, we are bound by the trial court's determinations of credibility and the weight to be afforded the testimony, absent an abuse of discretion. *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619-20 (1982). We see no abuse of discretion here, where there is competent evidence, testimony by Carter and defendant, which supports findings that Fowler made the call and arranged to meet Shockley so that he could radio the report to the Sheriff's Department. *See State v. Smith*, 118 N.C. App. 106, 111, 454 S.E.2d 680, 683 (question on appeal from suppression motion is whether findings are supported by competent evidence and whether findings support legally correct conclusions of law), *cert. denied*, 340 N.C. 362, 458 S.E.2d 196 (1995). This competent evidence also supports the trial court's findings that Fowler acted with "trickery" and made a

report based upon a situation which he orchestrated in reckless disregard for the truth.

### III

In *Watkins*, our Supreme Court determined that Harbour's stop of defendant was justified by his reasonable suspicion, which was based upon an anonymous tip and his own observations, following the tip, of the defendant. *Watkins*, 337 N.C. at 442-43, 446 S.E.2d at 70-71. The question in the present case is, however, whether a "tip" which is fabricated by a police officer may serve as a basis for an officer's reasonable suspicion.

Although reasonable suspicion is less stringent than probable cause, it nevertheless requires that statements from tipsters carry some "indicia of reliability." *Alabama v. White*, 496 U.S. 325, 332, 110 L. Ed. 2d 301, 310 (1990). Because the evidence which supports a reasonable suspicion, like that supporting probable cause, must bear some· "indicia of reliability," it follows that the evidence which will support reasonable suspicion, though it may be of a lesser "quantity or content" than that to support probable cause, *White*, 496 U.S. at 330, 110 L. Ed. 2d at 309, must be genuine and not contrived misstatements by law enforcement officers. *See Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667 (1978) (misstatements and material omissions by government employees cannot legally support a determination of probable cause). Furthermore, "police [can]not insulate [one] officer's deliberate misstatement merely by relaying it through an officer-affiant personally ignorant of its falsity." *Franks*, 438 U.S. at 163, 57 L. Ed. 2d at 677 n.6.

In this case, Fowler orchestrated a situation which, after alerting a second officer who knew nothing of Fowler's actions, gave rise to another officer's reasonable suspicion. The facts upon which Harbour's reasonable suspicion were grounded were not genuine and the fact that he had no knowledge of Fowler's "trickery" does not attenuate his actions from Fowler's illegal actions. *Franks*, 438 U.S. at 163, 57 L. Ed. 2d at 677 n.6; *see State v. Cooke*, 54 N.C. App. 33, 45, 282 S.E.2d 800, 808 (1981), *aff'd*, 306 N.C. 132, 291 S.E.2d 618 (1982). Accordingly, the trial court properly granted defendant's motion to suppress.

Affirmed.

Judges MARTIN, Mark D., and McGEE concur.