STATE OF NORTH CAROLINA v. ANGEL SANCHEZ, JR.

No. COA00-1075

(Filed 18 December 2001)

**1. Evidence— investigatory stop—informant's tip—contraband in briefcase—motion to suppress**

The trial court did not err in a trafficking in cocaine case by denying defendant's motion to suppress evidence obtained from his briefcase during an investigatory stop of a vehicle based on reliable and accurate information the police received from an informant's tip, because: (1) the informant spoke to the detective in person, revealing his identity and admitting to using and dealing cocaine with defendant; (2) although the informant had not been previously relied upon by officers, the face-to-face encounter provided the detective with an opportunity to assess the informant's reliability and demeanor; (3) the informant provided specific details concerning not only existing conditions, but also predictions of defendant's future behavior; and (4) there was sufficient police corroboration of the tip before the stop was made.

**2. Search and Seizure— investigatory stop—scope—show of force—officers drawing weapons—occupants of vehicle put in handcuffs**

The trial court did not err in a trafficking in cocaine case by concluding that the officers' actions did not exceed the scope of

an investigatory stop even though the officers made a show of force by drawing their weapons and placed the occupants of the vehicle in handcuffs, because: (1) the officers were justified in order to protect themselves when the suspect was considered armed and dangerous based on information provided by an informant; (2) the occupants of the vehicle were uncuffed and the officers put away their handguns once the officers ensured their safety; and (3) defendant's consent to the search of his briefcase was not a product of coercion and was voluntarily given.

**3. Search and Seizure— home of another—overnight guest— standing**

The trial court did not err in a trafficking in cocaine case by finding that defendant lacked standing to object to the search of his coparticipant's home where contraband was found under the stairwell located in the laundry room even though defendant contends he was an overnight guest temporarily residing in a living area located in the basement area which was connected to the garage and a laundry room, because: (1) defendant has failed to show that he personally has an expectation of privacy in the place searched and that his expectation was reasonable; and (2) at most, the evidence established that defendant was legitimately on the premises.

Appeal by defendant from judgment entered 24 February 2000 by Judge James Webb in Forsyth County Superior Court. Heard in the Court of Appeals 20 August 2001.

*Attorney General Roy A. Cooper, by Assistant Attorney General William McBlief, for the State.*

*Lawrence J. Fine for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Angel Sanchez, Jr., ("defendant") was convicted of trafficking in cocaine by possession and transportation and conspiracy to traffick in cocaine. Defendant appeals.

The State's evidence presented at trial tended to show the following: On 5 October 1995, Detective Joseph Walls ("Detective Walls") of the Narcotics Division of the Kernersville Police Department, received information from an informant that defendant intended to transport cocaine from Miami to Greensboro on 7

**STATE v. SANCHEZ**

[147 N.C. App. 619 (2001)]

October 1998 by airplane. The informant identified himself as Robert Segura ("Segura"). Segura admitted using and dealing cocaine for defendant in Kernersville and indicated that he "wanted out of the situation." He stated that he and his wife were in danger and the situation was "getting too big too quick." Segura, therefore, informed Detective Walls that defendant would either fly into the Greensboro airport with the cocaine or that the cocaine would arrive via next day mail. Segura also provided Detective Walls with the following information: (1) that defendant would likely have the cocaine secreted in blueprint tubes; (2) the name of the air carrier, the flight number and the arrival and departure time; (3) the name of defendant's traveling companion, Regina Cardo ("Cardo"); (4) that Frank ("Frank") and Mary Ann ("Mary Ann") Devita (collectively, "the Devitas") would meet defendant at the Greensboro airport; (5) descriptions of the Devitas' vehicles; (6) that Frank did not have a valid driver's license; (7) identified several people who would receive the cocaine from defendant; (8) that the Devitas possessed firearms; and (9) that on prior occasions, defendant has possessed plastic explosives.

Detective Walls and the other officers of the Kernersville Police Department (collectively "the officers") verified the information provided by Segura. The officers checked the criminal histories of Segura and the defendant. They obtained a photograph of defendant, verified the flight information and confirmed the Devitas' vehicle ownership. The officers also ran a license check which revealed that, in fact, Frank did not have a driver's license. On 7 October 1998, Detective Walls placed the Devita residence and the airport under surveillance. The Devitas drove to the Greensboro airport where they met defendant and Cardo during the morning of 7 October 1998, as forecasted by Segura. When Frank left the airport with Mary Ann, Cardo, and defendant, the officers followed the car.

Just two houses short of the Devitas' home, Detective Walls and seven officers stopped the Devitas' station wagon. Working in pairs, the officers removed the occupants from the vehicle. One officer placed the defendant and the occupants of the vehicle on the ground and handcuffed them while another officer covered the occupants with his handgun. The officers then frisked the occupants and searched the station wagon for weapons.

Having determined that there were no weapons, the officers put away their handguns and uncuffed the defendant and the occupants of the vehicle. No individual remained in cuffs for more than five minutes. Detective Walls then spoke to each occupant of the vehicle

separately, informing each that they were suspected of possessing cocaine. Detective Walls asked permission to search the vehicle and the belongings in the vehicle. Frank consented to the search of the station wagon, Cardo consented to the search of her purse, and defendant consented to the search of his briefcase.

The officers searched the station wagon, Cardo's purse, and defendant's briefcase but found no cocaine. However, they found several items that corroborated Segura's statement that the cocaine might arrive by overnight mail. This included a receipt in Cardo's purse dated 1 October 1998 for a post office box in her name at Mailbox Etc., Kernersville, NC. In defendant's unlocked briefcase the officers found two documents: a check stub dated 7 October 1998 showing payment to Mailbox, Etc., for a Federal Express package and a ledger showing several of the names previously provided by Segura. The officers did not seize the items but instead copied the information verbatim. The officers then returned the items to defendant and Cardo. The stop and search lasted approximately forty-five (45) minutes. Before permitting the four to leave, a citation was issued to Frank for driving without a license.

Detective Walls then asked Frank if he could search his nearby residence. After negotiating the number of officers permitted to enter his home, Frank consented to the search. The officers did not find any cocaine; however, they discovered several handguns and assault rifles.

On 8 October 1998, the day following the stop, Detective Walls assigned two officers to watch the Devita home while he and another officer waited at Mailbox Etc. Later that morning, Federal Express delivered a package to the Devita home. Detective Walls immediately ordered "a freeze" of the Devita home while he secured a search warrant. While Detective Walls left to obtain a search warrant, the officers remained inside the house to monitor the residence. One officer remained upstairs with the Devitas while another officer remained with the defendant and Cardo in the basement. Although they did not search the house, the officers observed empty Federal express packages and a plate of "white powder residue" located downstairs.

After Detective Walls arrived with the warrant, the officers searched the entire house, including the basement. In a closet located at the bottom of the stairs, an officer found two blueprint tubes that contained cocaine. Together, the tubes held 496 grams of cocaine.

Prior to trial, defendant moved to suppress the items recovered from his briefcase and from the Devita residence. After a lengthy *voir dire*, the trial court denied defendant's motion to suppress. Defendant was subsequently convicted as charged. Defendant appeals.

---

**[1]** In his first assignment of error, defendant contends that the trial court erred in denying his motion to suppress evidence obtained from his briefcase. Specifically, defendant argues that the actions of the Kernersville Police Department during the traffic stop of the Devita vehicle far exceeded the allowable scope of an investigatory stop. Thus, defendant contends that probable cause was therefore necessary to support the resulting search. These arguments are without merit.

The scope of appellate review of an order suppressing evidence is strictly limited. *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). This Court must determine whether the trial judge's findings of facts are supported by competent evidence. *Id.* Factual findings which are supported by competent evidence are deemed binding on appeal. *Id.* "While the trial court's factual findings are binding if sustained by the evidence, the court's conclusions based thereon are reviewable *de novo* on appeal." *State v. Parker*, 137 N.C. App. 590, 594, 530 S.E.2d 297, 300 (2000).

The Fourth Amendment to the Constitution of the United States and Section 20 of Article I of the North Carolina Constitution prohibits unreasonable searches and seizures. *State v. Garner*, 331 N.C. 491, 506-07, 417 S.E.2d 502, 510 (1992), *cert denied*, 516 U.S. 1129, 133 L. Ed. 2d 872 (1996). They apply to "seizures of the person, including brief investigatory detentions such as those involved in the stopping of a vehicle." *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 69-70 (1994). "A court must consider 'the totality of circumstances—the whole picture' in determining whether reasonable suspicion to make an investigatory stop exists." *Id.* (quoting *U.S. v. Cortez*, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 629 (1981), *cert denied*, 455 U.S. 923, 71 L. Ed. 2d 464 (1982)). To determine whether the information relied on by the officers in the instant case was sufficiently reliable to create reasonable suspicion justifying the stop, we must probe the reliability and content of the informant's tip.

An informant's tip may provide the reasonable suspicion necessary for a *Terry* stop. *See Alabama v. White*, 496 U.S. 325, 328, 110 L. Ed. 2d 301, 305 (1990) (holding that the informant's tip carried

sufficient "indicia of reliability" to justify an investigatory stop even if insufficient to support an arrest or search warrant). "Although reasonable suspicion is less stringent than probable cause, it nevertheless requires that statements from tipsters carry some 'indicia of reliability[.]' " *State v. Watkins*, 120 N.C. App. 804, 809, 463 S.E.2d 802, 805 (1995) (quoting *White*, 496 U.S. at 330, 110 L. Ed. 2d at 309).

In evaluating the reliability of an informant's tip, due weight must be given to the informant's veracity, reliability, and basis of knowledge as highly relevant factors in determining whether an informant's tip is sufficient from the totality of circumstances. *Illinois v. Gates*, 462 U.S. 213, 230, 76 L. Ed. 2d 527, 543 (1983). There must also exist sufficient police corroboration of the tip before the stop is made. If reasonable suspicion exists before the stop is made, there is no violation of the Fourth Amendment. *State v. Hughes*, 353 N.C. 200, 207, 539 S.E.2d 625, 630 (2000).

In this case, a review of the facts establishes that the tip provided by Segura was sufficiently reliable to create reasonable suspicion to justify the stop. First, Segura spoke to Detective Walls in person, revealing his identity and admitting to using and dealing cocaine with defendant. Though the informant in the present case had not previously been relied on by the officers, the face-to-face encounter provided Detective Walls an opportunity to assess his reliability and demeanor. Second, Segura provided specific details concerning not only existing conditions but also predictions of defendant's future behavior. He indicated that defendant and Cardo would fly from Miami to Greensboro on 7 October 1998 on a particular flight, and that the Devitas would pick up defendant and Cardo at the airport. He stated that the cocaine would arrive by next day mail in Kernersville. Segura also provided the names of several people who would receive cocaine from defendant.

Based upon the information the officers received from Segura, Detective Walls verified the air carrier, flight number, arrival time, departure time, and traveling companion. The officers also verified the Devita's residence and vehicle and defendant's description and criminal history. Detective Walls recognized several names of the persons who Segura alleged would receive cocaine from defendant. Lastly, the officers corroborated Segura's report that Frank did not possess a valid driver's license. Based on this information and corroboration, the officers had reasonable grounds to believe the tip was

accurate and reliable, and that the investigatory stop of the vehicle was justified.

[2] We next determine whether following the stop of defendant's vehicle, the officers' actions exceeded the scope of an investigatory stop. Defendant argues that because the actions of the officers exceeded the scope of a valid investigatory stop, such as in drawing weapons and using handcuffs, the defendant's consent to search was involuntary. We disagree.

An investigatory stop must be "based on specific and articulable facts, as well as rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." *Watkins*, 337 N.C. at 441, 446 S.E.2d at 70. If upon detaining the individual, the officer's personal observations confirm that criminal activity may be afoot and suggest that the person detained may be armed, the officer may frisk him as a matter of self-protection. *State v. Streeter*, 283 N.C. 203, 210, 195 S.E.2d 502, 507 (1973). The United States Supreme Court has held that in conducting *Terry* stops, the investigating officers may take steps reasonably necessary to maintain the status quo and to protect their safety including the drawing of weapons. *See U.S. v. Hensley*, 469 U.S. 221, 235, 83 L. Ed. 2d 604, 616 (1985) (holding that the officers were justified in approaching defendant's vehicle with pistols drawn when suspect was described as "armed and dangerous"). The scope of the intrusion varies with the facts and circumstances of each case. *Florida v. Royer*, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238 (1983). However, an investigative detention should last no longer than is necessary to "effectuate the purpose of the stop." *Id.*

In this case, the officers were justified in making a show of force to protect themselves when the suspect was considered armed and dangerous. Through the information provided by Segura, the officers had reasonable grounds to believe that defendant was armed and dangerous and that criminal activity may be afoot. First, Segura informed the officers that Frank was driving without a valid driver's license. The officers verified this information which provided reasonable suspicion to stop the vehicle. Second, Segura informed the officers that defendant might be heavily armed and might possess explosives. On *voir dire* Detective Walls testified that the officers conducted a felony traffic stop for their safety where they placed the occupants of the vehicle in handcuffs, placed them on the ground, searched them for weapons, and then searched the vehicle for weapons.

Once the officers ensured their safety, they uncuffed the defendant and the occupants of the vehicle and put away their own handguns. Thus, defendant and the occupants of the vehicle spent no more than five minutes in handcuffs. Based on these facts, we hold that the officers were justified in making a limited investigative detention of defendant and the occupants of the vehicle and this detention did not exceed the scope of an investigatory stop.

Moreover, defendant's consent to search his briefcase was not the product of coercion. The State has the burden of proving that a consent to search was voluntarily given. *State v. Morroco*, 99 N.C. App. 421, 429, 393 S.E.2d 545, 549 (1990). When a defendant's detention is lawful, the State need only show "that defendant's consent to the search was freely given, and was not the product of coercion." *State v. Munoz*, 141 N.C. App. 675, 683, 541 S.E.2d 218, 223, *cert. denied*, 353 N.C. 454, 548 S.E.2d 534 (2001).

In the instant case, the facts demonstrate no coercion by the officers in obtaining defendant's consent. Once the officers determined that there were no explosives or weapons in the vehicle, the handcuffs were removed. Detective Walls then asked defendant for permission to search his briefcase and defendant unequivocally responded "yes." There is no evidence that defendant at any time objected to the search. Moreover, the officers did not use coercive tactics in obtaining defendant's consent to search the briefcase. We agree with the trial court that the evidence supports a finding that the consent was voluntarily given. The subsequent search was therefore lawful and this assignment of error is overruled.

**[3]** Defendant next assigns error to the trial court's finding that he lacked standing to object to the search of the Devita home. Further, defendant contends that the search warrant was issued without probable cause. These arguments are without merit.

The United States Supreme Court has held that the touchstone of the Fourth Amendment analysis on standing is whether a person has a "constitutionally protected reasonable expectation of privacy." *Oliver v. U.S.*, 466 U.S. 170, 177, 80 L. Ed. 2d 214, 223 (1984). "The Amendment does not protect the merely subjective expectation of privacy, but only those expectation[s] that society is prepared to recognize as 'reasonable.' " *Id.* (quoting *Katz v. U.S.*, 389 U.S. 347, 360, 19 L. Ed. 2d 576, 587 (1967)). In order for defendant to establish standing to contest the search of the premises, he must show that he has a legitimate expectation of privacy *in the premises*. *Rakas v.*

*Illinois*, 439 U.S. 128, 143, 58 L. Ed. 2d 387, 401 (1978) (emphasis added). However, when a defendant fails to assert a property or possessory interest in the property searched, or a showing of circumstances giving rise to his reasonable expectation of privacy in the premises searched, he fails in his burden of proving standing. *State v. Jones*, 299 N.C. 298, 306, 261 S.E.2d 860, 865 (1980).

Defendant, relying on *Minnesota v. Olson*, 495 U.S. 91, 109 L. Ed. 2d 85 (1985), contends that he has standing to object to the issuance of the search warrant on the grounds that he was an overnight guest. We disagree.

The United States Supreme Court has recognized that "status as an overnight guest alone is enough to show that [defendant] has an expectation of privacy in the home that society is prepared to recognize as reasonable." *Olson*, 495 U.S. at 96-7, 109 L. Ed. 2d at 93. We are cognizant of *Minnesota v. Olson*; however, we decline to extend *Olson* to the present case because defendant has failed to show that "he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88, 142 L. Ed. 2d 373, 379 (1998).

The facts indicate that defendant was temporarily residing in a living area located in the basement area which was connected to the garage and a laundry room. The laundry room was separated by a door to the basement and garage area. The contraband was found under the stairwell located in the laundry room. Defendant has not presented any evidence or alleged any facts which would support a finding that he had a reasonable expectation of privacy with respect to the contraband hidden under the stairwell which was a common area in the Devita residence. At most the evidence presented established that defendant was legitimately on the premises; however, this fact standing alone does not create the requisite expectation of privacy that would permit him to assert a Fourth Amendment violation.

Having held that defendant lacked standing to object to the search, we do not address defendant's remaining assignments of error.

No error.

Chief Judge EAGLES and Judge THOMAS concur.