668 S.E.2d 622 (2008)
STATE of North Carolina
v.
Michael Anthony WASHINGTON, Defendant.
No. COA08-217.
Court of Appeals of North Carolina.
November 18, 2008.
*623 Roy Cooper, Attorney General, by Jay L. Osborne, Assistant Attorney General, for the State.
Appellate Defender Staples Hughes, by Assistant Appellate Defender Daniel Shatz, for defendant-appellant.
MARTIN, Chief Judge.
Defendant, Michael Anthony Washington, was indicted in case number 05 CRS 58609 for simple possession of marijuana, possession of drug paraphernalia, and unlawfully resisting, obstructing, or delaying a public officer. In case number 05 CRS 58611, he was indicted for felony possession of cocaine, driving while license revoked, and for being a habitual felon. Defendant filed a motion to suppress the evidence obtained by the arresting officer on the grounds that the officer did not lawfully arrest defendant prior to her search of defendant's pockets incident to that arrest. The trial court heard and denied defendant's motion to suppress.
Defendant subsequently entered a guilty plea in case number 05 CRS 58611 to felony possession of cocaine and to being a habitual felon. As a result of his plea, the remaining charges against defendant in case numbers 05 CRS 58609 and 58611 were dismissed, and the trial court imposed a sentence of 80 to 105 months imprisonment. Prior to the entry of his plea and pursuant to N.C.G.S. § 15A-979(b), defendant properly preserved his right of appeal to this Court from the *624 order denying his motion to suppress the evidence obtained by the arresting officer. See N.C. Gen.Stat. § 15A-979(b) (2007) ("An order finally denying a motion to suppress evidence may be reviewed upon an appeal from a judgment of conviction, including a judgment entered upon a plea of guilty."). This appeal follows.
The scope of appellate review of a trial court's order granting or denying a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). When findings of fact are not challenged on appeal, "such findings are presumed to be supported by competent evidence and are binding on appeal." State v. Baker, 312 N.C. 34, 37, 320 S.E.2d 670, 673 (1984) (internal quotation marks omitted).
In the present case, the findings of fact listed below are unchallenged by defendant and are, thus, presumed to be supported by competent evidence.
1. On 28 September 2005, at approximately 2:00 p.m., Jacksonville Police Detective Charles James and Detective Sgt. Ashley Weaver (then Ashley Brown) were parked in Det. James' unmarked police vehicle conducting surveillance on a residence located at 114 Cedar Creek Drive, Jacksonville, North Carolina. The detectives possessed several felony arrest warrants for an individual named Jerry Carr, who lived in that residence.
2. At approximately 2:45 p.m., the defendant arrived at the residence driving a white four-door motor vehicle. The officers observed the defendant get out of the vehicle and enter the residence.
3. Det. James ran a license plate check on the white vehicle and determined that its registration plate had expired and that the vehicle was not covered by liability insurance, a violation of the motor vehicle laws of North Carolina.
4. About five minutes later, Jerry Carr and the defendant came out of the residence, got into the white vehicle, and drove off. The defendant was driving and Carr was sitting in the front passenger seat.
5. Det. James drove up behind defendant's vehicle and was preparing to stop it when defendant turned and stopped in the parking lot of a gasoline station at the corner of Cedar Creek Drive and Gum Branch Road.
6. Det. James parked next to the passenger side of defendant's vehicle. Det. James got out of his vehicle, ordered Carr out of the defendant's automobile, and placed Carr under arrest.
7. In the meantime, Sgt. Weaver approached defendant's vehicle from the driver's side. The defendant got out of his vehicle and started walking toward the door of the gasoline station. Sgt. Weaver identified herself and told defendant she needed to speak with him. The defendant asked her why, and she replied that they had warrants for Carr's arrest. The defendant continued walking away from her and replied, "If ya'll want to talk with him, you don't need me."
8. Sgt. Weaver told the defendant to stop at least three times. The defendant reached into his right front pants pocket and began to run down Gum Branch Road in the direction of Rain Tree Subdivision. Sgt. Weaver gave chase on foot.
9. Sgt. Weaver wanted to talk with the defendant because he was driving a vehicle with an expired registration plate and no liability insurance coverage and because he was transporting a person wanted by the police for several felony narcotics violations.
10. When Sgt. Weaver observed the defendant reach into his pants pocket, she concluded, based on her training and experience, that he had either some controlled substance or a weapon in that pocket.

*625 11. During the foot chase, Sgt. Weaver never saw the defendant remove his hand from his pocket or throw anything down.
12. Two private citizens, a male motorcyclist and a female motorist, attempted to assist Sgt. Weaver by blocking defendant's path with their vehicles. Both citizens then joined the foot chase.
13. Defendant ran behind a wood line and Sgt. Weaver lost sight of him for about 30 seconds. The private citizens and Sgt. Weaver kept shouting at the defendant, telling him to stop and lie down. The defendant came out of the woods and stopped in the driveway of a private residence.
14. Sgt. Weaver told him to get down on his knees and place his hands behind his head. The defendant got down on his knees, but did not place his hands behind his head. Sgt. Weaver forcibly handcuffed the defendant and placed him under arrest for resisting, obstructing, and delaying a law enforcement officer....
15. Sgt. Weaver searched the wooded area where she had lost sight of the defendant, and she found a small plastic bag containing marijuana.
16. Law enforcement officers transported defendant to the Jacksonville Police Department, where Sgt. Weaver searched the defendant's outer clothing and found a small amount of cocaine and marijuana in his right front pants pocket.
Defendant contends the trial court erred by denying his motion to suppress because the search that led to the discovery of the evidence was not incident to a valid arrest. Defendant argues that the court erred when it concluded that the arresting officer "had probable cause to arrest defendant for resisting, obstructing, and delaying a law enforcement officer and for the motor vehicle violations [of operating a motor vehicle with no insurance and with an expired registration]." For the reasons discussed below, we affirm the trial court's order denying defendant's motion to suppress.

I.
Defendant first contends the trial court erred by finding that defendant was placed under arrest "for operating a motor vehicle with no insurance and with an expired registration," arguing that there is no competent evidence to support this portion of Finding of Fact 14. We agree.
The evidence tended to show that, after running a license plate check on the vehicle defendant was driving on 28 September 2005, the officers determined that the vehicle's registration plate had expired and that the vehicle was not covered by liability insurance in violation of the motor vehicle laws of North Carolina. At the hearing, Jacksonville Police Department Sergeant Ashley Weaver testified that "initially, yes, we did need to talk to [defendant] ... to ascertain who was the owner of the vehicle and who was responsible for the insurance and registration." However, Sergeant Weaver also testified that, "during the foot chase, Detective James had ascertained that the vehicle belonged to a female, which was obviously not [defendant]." Accordingly, defendant was not charged with the traffic violations of operating a motor vehicle with no insurance and with an expired registration since the vehicle was "not his responsibility." She further testified:
A. Once [defendant] was placed under arrest for the ROD[resisting, obstructing, or delaying a law enforcement officer]for running, once I obtained his name and ran his driver's license, it was found that he did not have a valid driver's license and was driving while on a revoked license. He was placed under arrest for thoseboth of those and possession of marijuana. He was placed into a marked patrol vehicle and transported back to the police department.
. . . .
A. . . . I searched [defendant] incident to arrest.
Q. And at that time, he was under arrest for?

*626 A. For the ROD. And when I got once he was actually detained in handcuffs and I ran his name, he was under arrest for driving while license revoked and the possession of marijuana that was thrown where he was located.
In addition, the two arrest warrants issued to defendant on 28 September 2005 identify the following four offenses for which he was arrested: felony possession of cocaine, simple possession of marijuana, possession of drug paraphernalia, and unlawfully resisting, obstructing, or delaying a public officer. Therefore, based on the arresting officer's testimony and the arrest warrants in the record before this Court, we conclude that the evidence does not support the portion of Finding of Fact 14 which found that defendant was arrested for the motor vehicle violations of "operating a motor vehicle with no insurance and with an expired registration." However, the unchallenged portion of Finding of Fact 14 in which the trial court found that defendant was arrested for resisting, obstructing, or delaying a law enforcement officer is presumed to be supported by competent evidence and remains binding.

II.
In its Conclusion of Law 1, the trial court concluded that
Sgt. Weaver had the right to make a brief investigatory stop of the defendant for the purpose of attempting to question him about his transportation of a person wanted by law enforcement officers for several felony offenses and based upon his operation of a motor vehicle with no insurance and with an expired registration plate.
Defendant contends the portion of this conclusion which states that the officer had the right to make a brief investigatory stop "for the purpose of attempting to question [defendant] about his transportation of a person wanted by law enforcement officers for several felony offenses" is not supported by the trial court's findings of fact and is erroneous as a matter of law. We agree.
"Article I, Section 20 of our North Carolina Constitution, like the Fourth Amendment, protects against unreasonable searches and seizures." State v. McClendon, 350 N.C. 630, 636, 517 S.E.2d 128, 132 (1999) (emphasis in original). "The right to be free from unreasonable searches and seizures applies to seizures of the person, including brief investigatory stops." In re J.L.B.M., 176 N.C.App. 613, 619, 627 S.E.2d 239, 243 (2006) (citing Terry v. Ohio, 392 U.S. 1, 16-19, 88 S.Ct. 1868, 20 L.Ed.2d 889, 903-05 (1968)). "An investigatory stop must be justified by `a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.'" State v. Watkins, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (quoting Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637, 61 L.Ed.2d 357, 362 (1979)), appeal after remand on other grounds, 120 N.C.App. 804, 463 S.E.2d 802 (1995). "The stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." Id. at 441, 446 S.E.2d at 70 (citing Terry, 392 U.S. at 21-22, 20 L.Ed.2d at 906; State v. Thompson, 296 N.C. 703, 706, 252 S.E.2d 776, 779, cert. denied, 444 U.S. 907, 100 S.Ct. 220, 62 L.Ed.2d 143 (1979)). "The only requirement is a minimal level of objective justification, something more than an `unparticularized suspicion or hunch.'" Id. at 442, 446 S.E.2d at 70 (quoting U.S. v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1, 10 (1989)). However, "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." Ybarra v. Illinois, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238, 245 (1979) (citing Sibron v. New York, 392 U.S. 40, 62-63, 88 S.Ct. 1889, 20 L.Ed.2d 917, 934-35 (1968) ("The inference that persons who talk to narcotics addicts are engaged in the criminal traffic in narcotics is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual's personal security.")), reh'g denied, 444 U.S. 1049, 100 S.Ct. 741, 62 L.Ed.2d 737 (1980).
In the present case, the officers testified that they observed defendant drive up to Mr. Carr's residence, enter the residence for about five minutes, and exit the residence *627 with Mr. Carr. According to the officers' testimony, defendant entered the driver's side of the vehicle, Mr. Carr entered the passenger's side of the vehicle, then defendant drove about 500 yards and came to a stop at the gas station. Jacksonville Police Department Detective Charles James, III provided the following additional testimony:
Q. Were you familiar with the defendant prior to [28 September 2005]?
A. No, I was not.
. . . .
Q. Detective James, what had [defendant] done illegally?
A. [Defendant] had not done anything. I was looking at the passenger of his vehicle, Mr. Carr.
. . . .
Q. And you didn't have any information on [defendant]?
A. No, I did not.
. . . .
Q. And you didn't have any warrants or [Sergeant Weaver] didn't have any warrants on [defendant]?
A. No, we didn't.
Q. And you didn't know who [defendant] was at th[e] time [defendant pulled the car into the gas station]?
A. No, I did not.
Q. And did [Sergeant Weaver]?
A. Not that I'm aware of.
Sergeant Weaver further testified:
Q. And prior to seeing [defendant] at [Mr. Carr's] address, ... he was not the target of any investigation
A. No, he was not.
Q. with the police department or anything of that nature?
A. No.
Q. You had never had any dealings with him?
A. No, I haven't.
. . . .
A.... While we were waiting for Mr. Carronce [defendant] arrived at the residence, we ran the tag on the vehicle [defendant was driving], and the vehicle had an expired registration and no insurance. So we had an[ ] issue with the driver of that vehicle also.
Thus, since there was no competent evidence presented at the suppression hearing that defendant was involved in any criminal activity based on his association with Mr. Carr, the portion of Conclusion of Law 1 which concluded that the officer had a right to make a brief investigatory stop of defendant because he was transporting Mr. Carr was erroneous as a matter of law. However, the evidence in the record and the findings of fact amply support the remaining portion of that conclusion of law which concluded that the officer "had the right to make a brief investigatory stop of the defendant ... based on his operation of a motor vehicle with no insurance and with an expired registration plate." See N.C. Gen.Stat. §§ 20-111(1)-(2), 20-183(a), 20-313 (2007); see, e.g., State v. Johnson, 186 N.C.App. 673, 675, 651 S.E.2d 907, 908 (2007) ("The improper tags, standing alone, gave the deputies sufficient cause to stop defendant."); State v. Edwards, 164 N.C.App. 130, 136, 595 S.E.2d 213, 218, disc. review denied, 358 N.C. 735, 603 S.E.2d 879 (2004) ("[T]hat defendant's vehicle had an expired Illinois registration plate ... was sufficient in and of itself to warrant initially stopping defendant.").

III.
Finally, defendant contends the trial court erred by concluding that the officer "had probable cause to arrest [him] for resisting, obstructing, and delaying a law enforcement officer." Defendant asserts that he did not flee from the officer's lawful attempt to make a brief investigatory stop, but argues that his encounter with the officer was consensual and that State v. Sinclair, ___ N.C.App. ___, 663 S.E.2d 866 (2008), controls. We believe the present case is instead analogous to the circumstances of State v. Lynch, 94 N.C.App. 330, 380 S.E.2d 397 (1989), and for the reasons discussed below, we find no error.
N.C.G.S. § 14-223 provides that, "[i]f any person shall willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge a duty of his office, he shall be guilty of a Class *628 2 misdemeanor." N.C. Gen.Stat. § 14-223 (2007). The elements of resisting, delaying, or obstructing an officer have been identified as follows:
[(1)] that the victim was a public officer;
[(2)] that the defendant knew or had reasonable grounds to believe that the victim was a public officer;
[(3)] that the victim was discharging or attempting to discharge a duty of his office;
[(4)] that the defendant resisted, delayed, or obstructed the victim in discharging or attempting to discharge a duty of his office; and
[(5)] that the defendant acted willfully and unlawfully, that is intentionally and without justification or excuse.
State v. Dammons, 159 N.C.App. 284, 294, 583 S.E.2d 606, 612, disc. review denied, 357 N.C. 579, 589 S.E.2d 133 (2003), cert. denied, 541 U.S. 951, 124 S.Ct. 1691, 158 L.Ed.2d 382 (2004). "The conduct proscribed under [N.C.G.S. §] 14-223 is not limited to resisting an arrest but includes any resistance, delay, or obstruction of an officer in the discharge of his duties." Lynch, 94 N.C.App. at 332, 380 S.E.2d at 398. For example, this Court has concluded that flight from a lawful investigatory stop "may provide probable cause to arrest an individual for violation of [N.C.G.S. §] 14-223." See id. at 334, 380 S.E.2d at 399.
In Sinclair, an officer and another plain-clothed law enforcement agent approached defendant, who was observed sitting in a chair "among six to ten other people" outside a bowling alley, which was "a local hangout" and a "known drug activity area." See Sinclair, at 869. After the officer said to the defendant, "`[L]et me talk to you,' ... [d]efendant stood up out of his chair, took two steps toward [the officer], and said, `Oh, you want to search me again, huh?' Defendant did not sound irritated or agitated, `[j]ust normal.'" Id. (fourth alteration in original). The officer replied, "Yes, sir," and continued walking toward the defendant. See id. at 869. Then, defendant "stopped ten or twelve feet from [the officer], `quickly shoved both of his hands in his front pockets and then removed them,' ... made his hands into fists and took a defensive stance." See id. at 869. As the officer got closer to the defendant, the defendant said, "Nope. Got to go," and "`took off running' across an adjacent vacant lot," where officers gave chase and soon after took the defendant into custody. See id. This Court determined that these facts did not give the officer "a reasonable, articulable suspicion that [the d]efendant was involved in criminal activity," and that "even if [the officer] was attempting an investigatory stop, such a stop was unlawful." Id. at 871. This Court instead concluded that the encounter between the defendant and the officer was consensual and so determined that the defendant's flight from that encounter could not "be used as evidence that [the d]efendant was resisting, delaying, or obstructing [the officer] in the performance of his duties." See id. at 871.
In Lynch, plain-clothed officers who were on patrol in an unmarked police car observed the defendant on a street corner around 5:30 p.m. and "mistakenly believed" that the defendant was a person for whom they "had warrants to arrest ... for sale or delivery of cocaine." Lynch, 94 N.C.App. at 330-31, 380 S.E.2d at 397. Shortly thereafter, the officers stopped a vehicle that the defendant had entered and one of the officers "approached the car, identified himself as a police officer, and asked defendant to identify himself. Defendant did not respond, jumped out of the car, and attempted to flee. [However, t]he officers apprehended defendant and, after a brief struggle, took him into custody," "initially arrest[ing him] for resisting public officers." See id. at 331, 380 S.E.2d at 397. This Court determined that, since the officers had "a reasonable basis to stop [the] defendant and require him to identify himself" to ascertain whether he was the named subject in their arrest warrants, "the officers were lawfully discharging a duty of their office." See id. at 333, 380 S.E.2d at 399. Accordingly, based on the evidence of the defendant's flight from a lawful investigatory stop and his brief struggle after his arrest, this Court sustained defendant's conviction under N.C.G.S. § 14-223. See id. at 334, 380 S.E.2d at 399.
*629 In the present case, as excerpted in the findings of fact above, Sergeant Weaver testified that when she approached defendant, she displayed her "police-issued, city-issued badge" and announced herself as a detective with the Jacksonville Police Department. She testified that defendant asked her what she wanted and she "advised him that [they] had warrants on his passenger and [that his passenger] was being placed under arrest." Defendant then told Sergeant Weaver, "`Well, if y'all need him, then you don't need me,' or something to that effect, and then proceeded to walk away." Sergeant Weaver again advised defendant to stop, stating "that [she] needed to talk to him. He said that he was just going into the store and would be right back. [She] again told him to stop. On the third time, he reached into his right front pocket with his right hand and took off running." She further testified that she did not have an opportunity to advise defendant that she needed to speak with him about the expired registration and insurance on the vehicle defendant was driving, stating instead:
I told him that I needed to talk to him. He asked why. I told him because we were arresting the passenger. He said, "Then you don't need to talk to me." I said, "Well, I need to talk to you. I need you to stop," at which time he said he was going in the store and he would be right back out. I told him, "No, that he needed to stop," at which time he took off running.
Defendant asserts that, because the officer did not state that she needed to speak with him about "his operation of a motor vehicle with no insurance and with an expired registration plate," there was no "objective reason" for him to treat Sergeant Weaver's repeated commands to stop "as anything but a consensual encounter from which he was legally entitled to flee." Thus, defendant argues that, according to Sinclair, his flight cannot be construed as an unlawful or willful act because "a person who ... exercises his right to leave [a consensual encounter] cannot be guilty of willfully and unlawfully resisting the officer who is attempting to question him."
Defendant misapplies our decision in Sinclair to the present case. As we determined in Section II above, the trial court's conclusion that Sergeant Weaver "had the right to make a brief investigatory stop of the defendant... based upon his operation of a motor vehicle with no insurance and with an expired registration plate" is supported by the evidence in the record and the court's findings of fact. Sinclair is distinguishable from the facts of the present case because this Court determined that the officers in Sinclair did not have the right to make an investigatory stop of the defendant. See Sinclair, at 871 ("These facts did not give [the officer] a reasonable, articulable suspicion that [the d]efendant was involved in criminal activity.").
In addition, Sergeant Weaver's failure to identify the reason for her lawful investigatory stop does not render the stop unlawful and reduce it to a consensual encounter. See, e.g., Lynch, 94 N.C.App. at 331, 333, 380 S.E.2d at 397, 399 (concluding that the officer had a right to make a brief investigatory stop while also finding that the officer only identified himself and asked the defendant to do the same before defendant fled). Our case law provides that, before a law enforcement officer can conduct a brief investigatory stop, "the officer must have a reasonable suspicion of criminal activity," see State v. McArn, 159 N.C.App. 209, 212, 582 S.E.2d 371, 374 (2003) (emphasis added) (citing Terry, 392 U.S. at 30, 88 S.Ct. at 1885, 20 L.Ed.2d at 911), and "[t]he reasonable suspicion must arise from the officer's knowledge prior to the time of the stop." State v. Hughes, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000) (emphasis added). Thus, an analysis of whether an investigatory stop is lawful or unlawful is determined by an examination of the information known by the officer attempting the stop, not known by the individual being subjected to the stop. See, e.g., Watkins, 337 N.C. at 441, 446 S.E.2d at 70 ("The stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training.") (emphasis added). In the present case, because the investigatory stop was legal, defendant's encounter *630 with the officer was not consensual and defendant "did not have a right to resist." See State v. Swift, 105 N.C.App. 550, 555, 414 S.E.2d 65, 68 (1992). Accordingly, defendant's subsequent flight from the lawful investigatory stop contributed to probable cause that defendant was in violation of N.C.G.S. § 14-223. See id. (citing Lynch, 94 N.C.App. 330, 380 S.E.2d 397 (1989)). Therefore, we find no error in the trial court's conclusion of law that the officer had probable cause to arrest defendant for resisting, obstructing, or delaying a law enforcement officer, and find no error in the trial court's denial of defendant's motion to suppress.
The order denying defendant's motion to suppress is affirmed.
Affirmed.
Judges McGEE and STEPHENS concur.