STATE OF NORTH CAROLINA
v.
DEVYN JAMAL BREWINGTON
No. COA08-1521
Court of Appeals of North Carolina
Filed July 7, 2009
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Martin T. McCracken, for the State.
Glover & Petersen, P.A., by Ann B. Petersen, for defendant.
BRYANT, Judge.
Devyn Jamal Brewington (defendant) appeals from a judgment entered upon his plea of guilty to one count of possession with intent to sell or deliver marijuana and one count of carrying a concealed gun. We affirm.

Facts
On 23 February 2007, at approximately 2:00 a.m., Winston-Salem police officers received a "signal 25" call and were directed to the Red Rooster nightclub to assist an officer in distress. Further radio communication from dispatch indicated shots had been fired and an officer may have been shot. Officers Hashon Geddings, Robert Santiago, V.C. Costner, and Sergeant L.T. Peterson separately responded to the chaotic scene where several hundred people were milling around in the Red Rooster parking lot. The officers proceeded to block the exits and prohibited people from leaving. Within a short period of time, radio communications reported that an anonymous call placed the shooting suspect, described as a black male, standing in the entrance to an apartment building located in the Woods Mill Apartments complex located directly across from the Red Rooster. Officers Geddings, Santiago, Peterson, and Costner went to the apartment complex to investigate.
The officers observed two groups of approximately five or six individuals standing outside of an apartment building on either side of the entrance. The officers approached the group on the left which consisted of five or six young black men wearing jeans and T-shirts. Officer Petersen testified he approached the group of individuals on the left because they were wearing street clothes "as if they had gone out to the club." He also testified that the attire of the individuals standing to the right of the entryway suggested they "were not likely coming from the club or from [the] parking lot where the incident occurred." Officer Petersen told the other officers to "cover" the group of young men with their weapons and ordered the men to get down on their knees with their hands on top of their heads and their fingers interlocked. One by one, Officer Petersen frisked the young men. The men were spaced approximately six to seven feet apart.
Defendant was the fifth individual to be frisked. As defendant was standing, Officer Geddings noticed a gun near defendant's foot. At that point, Officer Petersen tackled defendant to the ground, placed him in handcuffs, and arrested him for possession of a concealed weapon. Officer Petersen and Officer Santiago searched defendant incident to arrest and discovered a large bag containing smaller bags of marijuana.
Defendant was indicted for possession of a concealed weapon and possession with intent to sell or deliver marijuana. On 15 March 2007, defendant filed a motion to suppress on the basis that he was unlawfully seized and unlawfully searched in violation of the Fourth Amendment to the United States Constitution and in violation of the North Carolina Constitution, Article I sections 19 and 20. On 24 July 2008, following a hearing, defendant's motion was denied. The trial court made the following relevant findings in open court:
[T]he young men were outside the apartment, and certainly one could infer that they had been at the  they might possibly or even likely, given the way that they were dressed, had been at the nightclub across the street, at least earlier in the evening. They did not see any indication specifically that the young men were involved in any other criminal activity, other than that they possibly had been at the nightclub earlier in the evening and they were outside in the middle of the night dressed [in a manner] indicating that they had been across the street.
They did not do anything while the officers were observing them to indicate that at that second while they were being observed by law enforcement officers that they were doing anything illegal.
The court will[,] based on those findings of fact, conclude as a matter of law that the officers had . . . a reasonable suspicion that criminal activity was afoot; there were reports that an officer had been shot, and indications in the parking lot of the nightclub that that had in fact happened. That's certainly criminal activity.
It was a chaotic scene. Certainly with a shooting having just occurred in the middle of the night, in a crowded parking lot, the law enforcement officers were quite justified in believing that further violence could take place either to them or to any of the couple a hundred people who were out there in the parking lot, all of whom [were] at risk. At least in the short run.
Seems to me that the officers did have a reasonable suspicion to pat down folks in the immediate vicinity of the shooting, which would include the parking lot, and the area adjacent to it, from which shots could have been fired, resulting in the injury to the person who had been shot. At least in the immediate time period at issue here, where things were so chaotic and no one knew exactly what was going on, that officer safety and citizen safety indeed would make that a very reasonable thing to do.
They certainly had the, I think, the right to detain folks very close by to where the shooting occurred to ask them questions; and in the context of the shooting having occurred, a substantial crowd, it seems to me they were justified in frisking people to see if anyone had a weapon, both for their own safety and the safety of others around them. No Fourth Amendment violation either in detaining the Defendant . . . and it was not a consensual detention and it was certainly a more intrusive detention than in some circumstances, but . . .these circumstances were not just for the ordinary circumstances of talking to somebody on the street, where there's no indication that anybody is in danger or that any crime has occurred right there, a violent crime has occurred right there in the immediate vicinity, in the very recent past.
So I will find no Fourth Amendment violation.
. . .
Based on the findings of fact I would find that they did have probable cause to arrest [the defendant] based on the fact that the gun was hidden or concealed underneath his person while these events were going on, and that that gave them probable cause to arrest him for carrying a concealed weapon and to do a search incident to arrest.
Pursuant to a plea agreement, defendant pled guilty to one count of possession with intent to sell or deliver marijuana and one count of carrying a concealed weapon, and specifically reserved the right to appeal the denial of his motion to suppress. Defendant appeals.
On appeal, defendant argues the trial court erred in denying his motion to suppress. Defendant contends the officers had no justification for detaining or frisking defendant, thereby rendering the detention and frisk unconstitutional and requiring the suppression of evidence obtained as a result of the detention. We disagree.
Appellate review of a denial of a motion to suppress is "limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." State v. Barden, 356 N.C. 316, 340, 572 S.E.2d 108, 125 (2002) (citation and quotation omitted), cert. denied, 538 U.S. 1040, 155 L. Ed. 2d 1074 (2003).
A police officer may, consistent with the Fourth Amendment, conduct a limited investigatory detention of an individual when "the officer has a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." State v. Gray, 55 N.C. App. 568, 570, 286 S.E.2d 357, 359 (1982). "[I]f the totality of circumstances affords an officer reasonable grounds to believe that criminal activity may be afoot, he may temporarily detain the suspect." State v. Streeter, 283 N.C. 203, 210, 195 S.E.2d 502, 507 (1973). "If, after the detention, his personal observations confirm his apprehension that criminal activity may be afoot and indicate that the person may be armed, he may then frisk him as a matter of self-protection." Id. "Reasonable suspicion is `a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.'" State v. Barnard, 362 N.C. 244, 247, 658 S.E.2d 643, 645 (2008) (quoting Illinois v. Wardlow, 528 U.S. 119, 123, 145 L. Ed. 2d 570, 576 (2000)).
Our Supreme Court has determined that the reasonable suspicion standard requires "[t]he stop . . . be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." State v. Watkins, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (citing Terry v. Ohio, 392 U.S. 1, 21-22, 20 L.Ed.2d 889, 906). "A court must consider the totality of the circumstances  the whole picture in determining whether a reasonable suspicion . . . exists." Id. (internal quotations omitted). Moreover, "an assessment of the whole picture . . . must raise a suspicion that the particular individual being stopped is engaged in wrongdoing." United States v. Cortez, 449 U.S. 411, 418, 66 L. Ed. 2d 621 (1981).
"An anonymous tip can provide reasonable suspicion as long as it exhibits sufficient indicia of reliability." State v. Hughes, 353 N.C. 200, 207, 539 S.E.2d 625, 630 (2000) (citing Florida v. J.L., 529 U.S. 266, 146 L. Ed. 2d 254 (2000)). "[A] tip that is somewhat lacking in reliability may still provide a basis for reasonable suspicion if it is buttressed by sufficient police corroboration." Id. The information known to an officer before making a stop is crucial in determining whether an anonymous tip was sufficiently reliable to justify a stop. Id. (emphasis added).
Additionally, "[t]he United States Supreme Court has held that in conducting Terry stops, the investigating officers may take steps reasonably necessary to maintain the status quo and to protect their safety including the drawing of weapons." State v. Sanchez, 147 N.C. App. 619, 625, 556 S.E.2d 602, 607 (2001) (holding officers were justified in handcuffing the occupants of a car, placing the occupants on the ground, and covering the occupants with a gun in order to protect themselves).
In the instant case, considering the totality of the circumstances, the officers had reasonable suspicion to detain defendant. After the officers responded to the scene where another officer had been shot, dispatch reported that an anonymous tip indicated the suspect was located at the apartment complex across the street from the scene of the shooting.
The officers were also justified in making a show of force to protect themselves. Given the information provided by the anonymous tip that the suspect was at the apartment complex, the proximity of the apartment complex to the location of the club, and the proximity in time to a shooting at the club involving and injuring an officer, the officers had reasonable grounds to believe that at least one of the individuals standing in front of the apartment complex was armed and dangerous. Based on the anonymous tip, the officers were able to immediately eliminate a number of individuals who were standing outside of the apartment complex because their physical description did not match the description given in the tip. Officer Petersen testified that the group of young men which included defendant was approached by the officers because they were dressed in a manner "as if they had gone out to the club." The officers proceeded to ensure their safety by conducting a frisk of each person detained. When defendant was forced to stand in order to be frisked, the officers discovered a concealed gun. Based on these facts, we hold that the officers were justified in making a limited investigative detention of defendant.
The present case is distinguishable from the recent opinion of this Court in State v. Peele, ___ N.C. App. ___, 675 S.E.2d 682 (2009). In Peele, defendant appealed his driving while impaired conviction arguing that the trial court erred in denying his motion to suppress because the police officer who stopped defendant did not have reasonable articulable suspicion. Id. The State countered that the anonymous tip that a vehicle matching the description of defendant's car was driving recklessly when combined with the officer's observation that defendant's vehicle weaved within his lane on one instance was sufficient to establish reasonable suspicion of driving while intoxicated. Id. This Court reasoned that the officer's observation of defendant weaving once inside of his lane, standing alone, was insufficient to establish reasonable suspicion. Id. This Court also reasoned that the anonymous tip, standing alone, was insufficient to establish reasonable suspicion because it did not exhibit "sufficient indicia of reliability" nor did the officer's observation corroborate the caller's assertion of illegality. Id. Finally, this Court reasoned that coupling the tip with the officer's observation was insufficient, without any other suspicious circumstances, to establish reasonable suspicion. Id.
Unlike Peele, the circumstances in this case were sufficient to establish reasonable suspicion. Based on the totality of the circumstances  a large, chaotic crowd; an officer who had been shot; an anonymous tip indicating the suspect was nearby; and the proximity of the suspect's location to the crime scene  the "whole picture" shows that a reasonable suspicion existed justifying defendant's detention and subsequent frisk. Defendant's assignment of error is overruled.
The trial court did not err in denying defendant's motion to suppress the evidence obtained from his person during the detention and subsequent frisk. For the foregoing reasons we affirm the judgment of the trial court.
Affirmed.
Judges GEER and STEPHENS concur.
Report per Rule 30(e).