STATE OF NORTH CAROLINA v. SINCERE JONATHAN WILLIS

No. COA96-222

(Filed 4 March 1997)

1. **Searches and Seizures § 80 (NCI4th)— departure from drug house—evasive actions—investigatory stop—reasonable suspicion**

The trial court did not err in concluding that police officers had reasonable suspicion to make an investigatory stop of defendant after defendant left a suspected drug house just before a search warrant was executed where defendant took evasive action when he knew he was being followed. When an individual's presence at a suspected drug area is coupled with evasive actions, police may form from those actions the quantum of reasonable suspicion necessary to conduct an investigatory stop.

**Am Jur 2d, Searches and Seizures §§ 51, 78.**

**Supreme Court's views as to what constitutes valid waiver of accused's federal constitutional right to counsel. 101 L. Ed. 2d 1017.**

2. **Searches and Seizures § 80 (NCI4th)— cocaine—investigatory stop—pat down—exigent circumstances**

The trial court did not err in allowing the introduction of crack cocaine seized during an investigatory stop of defendant where the arresting officers suspected defendant was associated with drug trafficking. It is entirely understandable that police officers justifiably feared for their personal safety when their common-sense association of drugs and guns is combined with defendant's exit from a suspected drug house just prior to police execution of a search warrant; defendant's furtive, evasive behavior; defendant's nervous demeanor; and the sudden lunge of defendant's hand into the interior of his jacket during the pat-down by one of the officers. It is of no consequence that the jacket pocket did not contain a weapon; in the highly charged atmosphere resulting from defendant's sudden act, the detective moved in an immediate fashion to protect himself and other officers. The detective's search was limited to the jacket pocket and was proportionate to the exigent circumstances which occurred.

**Am Jur 2d, Searches and Seizures §§ 51, 78.**

Supreme Court's views as to what constitutes valid waiver of accused's federal constitutional right to counsel. 101 L. Ed. 2d 1017.

### 3. Appeal and Error § 147 (NCI4th)— preservation of objection—subsequent testimony

Defendant did not properly preserve for appeal his objection to an arresting police officer's opinion testimony where another police officer subsequently provided the same testimony without objection.

Am Jur 2d, Appellate Review §§ 614 et seq.

Sufficiency in federal court of motion in limine to preserve for appeal objection to evidence absent contemporary objection at trial. 76 ALR Fed. 619.

Appeal by defendant from judgment entered 29 August 1995 by Judge Knox V. Jenkins in Wake County Superior Court. Heard in the Court of Appeals 29 October 1996.

*Attorney General Michael F. Easley, by Assistant Attorney General William B. Crumpler, for the State.*

*Samuel L. Bridges for defendant appellant.*

SMITH, Judge.

Defendant appeals his conviction for trafficking in cocaine by possession. Defendant assigns error to the trial court's failure to grant his pretrial motion to suppress evidence, and to the trial court's allowance of certain testimony at trial. Finding no error in the proceedings below, we affirm.

The relevant facts are as follows. On 16 December 1994, Detective Ray G. Moss of the Raleigh Police Department applied for, and obtained, a search warrant for a residence located at 206 Peartree Lane in Raleigh, North Carolina. According to the search warrant application, a confidential informant had informed Detective Moss that he had seen cocaine at the 206 Peartree Lane residence within the seventy-two-hour period preceding the warrant application. This confidential informant told police that a person known as "Bugsy" was selling drugs out of the 206 Peartree Lane residence (hereinafter, the "premises").

While Detective Moss applied for the warrant, other Raleigh police officers began conducting surveillance of the premises. After roughly an hour's surveillance, and just prior to the execution of the warrant, the investigating officers noticed defendant leaving the premises. At this point, the surveilling officers were not sure what "Bugsy" looked like. Concerned that defendant (whom the police did not recognize) might be involved with the alleged drug activity taking place inside the premises, or that he might be "Bugsy" himself, Detective Kent Sholar began to follow him in his unmarked police car.

It soon became apparent to defendant that he was being followed by Sholar, and so, defendant took evasive action by cutting through a nearby hospital parking lot. While defendant was crossing the hospital lot, Officer Buddy Gabe Young, a uniformed officer, arrived on the scene. Detective Sholar gave Officer Young a description of defendant, and asked Officer Young to stop defendant and ask him for his identification. Because Detective Sholar was in plain clothes, he thought the wiser course was to allow a uniformed officer to approach defendant for the purpose of an investigative stop. Once in position, and without any backup officers immediately present, Officer Young exited his vehicle and walked over to defendant.

Officer Young identified himself and started to converse with defendant. Defendant then asked Officer Young why he was being stopped. Officer Young replied that he was conducting an investigative stop, and asked defendant for identification and for consent to a pat down for drugs and weapons. Defendant consented to the pat down. In the course of the pat down, Officer Young began to pat down the exterior, and then the interior, of the leather jacket defendant was wearing. Then, just as Officer Young began to check the interior pocket of defendant's leather jacket, defendant "lunged into the jacket with his hand." As Officer Young describes it, "both [of defendant's hands] came up," defendant's right hand "went in [to his jacket pocket] really fast," and defendant's actions "really worried me."

Officer Young, thinking defendant might be reaching for a weapon, and fearing for his personal safety, immediately "locked [his] hands around [defendant's] jacket, [effectively locking defendant's] hand inside his pocket." As Officer Young attempted to restrain defendant, Detective Sholar arrived and began to assist in controlling the rapidly developing situation. Officer Young testified that, "[a]t th[is] point [he] was worried about what was in [defendant's]

STATE v. WILLIS

[125 N.C. App. 537 (1997)]

pocket." Officer Young testified "[he] didn't know if there was a knife, a gun, or what was in there."

As Officer Young grabbed defendant's hand and tried to keep him from removing it from his pocket, he "locked [his] hands around the jacket, [with defendant's] hand inside his pocket . . . lock[ing] everything in." Simultaneously, Detective Sholar tried to control the left side of defendant's body, in an attempt "to keep [defendant's] hand in his pocket, because [he and Officer Young] didn't want him to bring [his hand] out if he had anything in it. . . . I was thinking [defendant had] a gun."

Once Detective Sholar and Officer Young "managed to get [defendant's] hand out of his pocket," they put defendant's hands behind him, and reached into defendant's interior jacket pocket and emptied it. Detective Sholar's search into defendant's jacket pocket revealed several plastic baggies appearing to contain crack cocaine. At this point, the crack cocaine was taken into police possession and defendant was arrested.

Subsequently, defendant was tried and convicted of trafficking in cocaine by possession of more than 28 grams and less than 200 grams. The crack cocaine seized from defendant during the above-described events was introduced in evidence by the State at trial.

---

[1] Our review of a motion to suppress is limited to a determination of whether the trial court's findings of fact are supported by competent evidence, and whether those findings are in turn supported by legally correct conclusions of law. *State v. Smith,* 118 N.C. App. 106, 111, 454 S.E.2d 680, 683, *cert. denied,* 340 N.C. 362, 458 S.E.2d 196 (1995). Defendant argues the search of his person violated the Fourth and Fourteenth Amendments to the United States Constitution and analogous provisions of the North Carolina State Constitution.

In response to these constitutional arguments the trial court made the following pertinent findings of fact and conclusions of law in its order denying defendant's motion to suppress.

FINDINGS OF FACT

* * * *

8. The detective following the defendant asked a uniform [*sic*] officer to stop and identify the defendant.

9. The defendant acted very nervously and when the uniform officer began to pat the defendant down for weapons, the defend-

ant put his hand inside his coat pocket. At that point, both officers, based on prior experience linking [the] drug trade and weapons, fearing defendant had a weapon, quickly grabbed defendant and forcibly removed defendant's hand from his pocket.

10. Defendant had nothing in his hand when it was removed from the pocket. Still not knowing if defendant had a weapon, the detective checked defendant's pocket and found no weapon, but two packages of cocaine. Until defendant put his hand in his pocket, no force, nor [*sic*] threats were employed by law enforcement officers against the defendant.

\* \* \* \*

## CONCLUSIONS OF LAW

1. Law enforcement officers did not need a warrant to approach and ask questions of defendant.

2. At the point that the defendant put his hand in his pocket the law enforcement officers were within the law in detaining and searching defendant's pocket, given the circumstances including defendant's nervousness, his evasive action, having just left a drug house . . . .

3. There was no violation of statutory or constitutional law.

It is well established that an officer may undertake an investigatory stop of a person, so long as that officer has a reasonable and articulable suspicion, based on objective facts, that the person is engaged in criminal activity. *State v. Watson*, 119 N.C. App. 395, 397, 458 S.E.2d 519, 521-22 (1995). Courts must consider " 'the totality of the circumstances—the whole picture' " in making the determination as to whether a reasonable suspicion to make an investigatory stop existed at the time the stop was made. *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (quoting *U.S. v. Cortez*, 449 U.S. 411, 417, 66 L.Ed.2d 621, 629 (1981)).

The totality of the circumstances test must be viewed through the prism of a reasonable police officer standard; that is, the reviewing court must take into account an officer's training and experience. *Id.* Thus, a police officer must have developed more than an " 'unparticularized suspicion or hunch' " before an investigatory stop may occur. *Watkins*, 337 N.C. at 442, 446 S.E.2d at 70 (quoting *U.S. v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10 (1989)).

On the basis of the above-stated rules, we conclude that Officer Young's decision to stop defendant and make inquiries as to his identification and prior presence at the drug house was well grounded in law. Defendant argues he was stopped only because he exited a suspected drug house. Were this actually the case, we might agree there was an insufficient basis to justify the investigatory stop. *See State v. Butler*, 331 N.C. 227, 234, 415 S.E.2d 719, 722-23 (1992) (mere presence of an individual on a corner known for drug activity is insufficient justification for an investigative stop). However, the record indicates the officers' decision to make the stop was based on more than defendant's mere presence at the suspected drug house.

The *Butler* Court held that, when an individual's presence at a suspected drug area is *coupled* with evasive actions, police may form, from those actions, the quantum of reasonable suspicion necessary to conduct an investigatory stop. *Id.* The instant case falls well within the confines of this rule from *Butler*. Here, defendant was not stopped just because he left a suspected drug house. Instead, defendant was stopped and detained because the totality of his conduct created a reasonable suspicion in Detective Sholar's mind that defendant was engaged in criminal conduct. Defendant left a suspected drug house just before the search warrant was executed. Defendant set out on foot and took evasive action when he knew he was being followed. And, at the suppression hearing, Detective Sholar testified that defendant had exhibited nervous behavior. We find that these facts, taken altogether, justified Officer Young's detention of defendant through an investigatory stop.

[2] Having determined that the investigatory stop and detention was proper, the next question we must answer is whether the ensuing warrantless search of defendant by the officers also passed constitutional muster. In the context of most "investigatory stops," police officers may perform only a limited frisk, or pat-down, of a suspect to discover any weapons which might be present. *Butler*, 331 N.C. at 234, 415 S.E.2d at 723. This limited frisk may take place, "[i]f, after the detention, [the investigating officer's] personal observations confirm his apprehension that criminal activity may be afoot and [] that the person may be armed . . . ." *State v. Peck*, 305 N.C. 734, 741, 291 S.E.2d 637, 641 (1982) (quoting *State v. Streeter*, 283 N.C. 203, 210, 195 S.E.2d 502, 507 (1973)). In such a situation, the limited frisk is a function of "self-protection." *Id.*

In the instant case, the search undertaken by Detective Sholar and Officer Young exceeded the scope of the limited frisk contem-

plated by the *Butler* and *Peck* courts. This does not mean, however, that the more intrusive search involved here was improper. The correct inquiry under the circumstances of this search is "whether the degree of intrusion [was] reasonably related to the events that took place." *Watson*, 119 N.C. App. at 398, 458 S.E.2d at 522. With this inquiry in mind, we have frequently stated that:

> "In determining whether or not conduct is unreasonable, '[t]here is no slide-rule formula,' and '[e]ach case must turn on its own relevant facts and circumstances.' In determining reasonableness, courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."

*Id.* (quoting *State v. Smith*, 118 N.C. App. 106, 114, 454 S.E.2d 680, 685, *cert. denied and supersedeas allowed*, 340 N.C. 362, 458 S.E.2d 196 (1995)).

Applying the principles elucidated in *Watson*, we conclude that the circumstances facing the officers in this case justified the warrantless search of the instant defendant. Both Officer Young and Detective Sholar testified that, in their experience, persons involved with drugs often carry weapons. Given their experience with drug trafficking, both officers were "entitled to formulate 'common-sense conclusions' about 'the modes or patterns of operation of certain kinds of lawbreakers.' " *Butler*, 331 N.C. at 234, 415 S.E.2d at 723 (citation omitted). When the officers' common-sense association of drugs and guns is combined with: (1) defendant's exit from a suspected drug house just prior to police execution of a search warrant; (2) defendant's furtive, evasive behavior; and (3) defendant's nervous demeanor; followed by, (4) defendant's sudden lunge of his hand into the interior of his jacket during the pat-down by Officer Young, it is entirely understandable that both officers justifiably feared for their personal safety.

In *Watson*, we held that "where [urgent] exigent circumstances are shown to exist," our courts have "allowed highly intrusive warrantless searches of individuals." *Watson*, 119 N.C. App. at 399, 458 S.E.2d at 522. The search at issue here, involving the emptying of defendant's interior jacket pocket, was perfectly consistent with, and proportionate to, the exigent circumstances facing the officers. Defendant's sudden movement of his hand into an interior jacket pocket, in the midst of Officer Young's pat-down, required immediate and decisive action. At that point, the situation became fluid and

volatile, and Detective Sholar reacted reasonably and proportionately in searching and emptying the jacket pocket.

That the jacket pocket did not end up containing a weapon is of no consequence to our analysis. In the highly charged atmosphere which resulted from defendant's sudden act, Detective Sholar moved in an immediate fashion to protect himself and the other officers. Detective Sholar's search was thus limited to the jacket pocket, and was proportionate to the exigent circumstances which occurred. For these reasons, this assignment of error is overruled.

[3] Defendant's second assignment of error concerns Detective Sholar's testimony that there exists, in his opinion, a close connection between those involved in the trade of illegal drugs and guns. This assignment merits no discussion, because defendant allowed Detective Ray Moss to testify about such connections without objection. *See State v. Moore*, 335 N.C. 567, 597, 440 S.E.2d 797, 814, *cert. denied,* —— U.S. ——, 130 L.Ed.2d 174 (1994). By failing to object to Detective Moss' testimony, defendant waived this subject as a proper issue for appellate review.

For the foregoing reasons, we find that defendant received a fair trial, free from error.

No error.

Judges LEWIS and WALKER concur.