STATE OF NORTH CAROLINA
v.
NAHIKULANI KEREKES.
No. COA09-70
Court of Appeals of North Carolina
Filed October 6, 2009
This case not for publication
Attorney General Roy Cooper, by Special Deputy Attorney General Douglas A. Johnston, for the State.
A. Wayne Harrison for defendant-appellant.
BRYANT, Judge.
Defendant Kerekes appeals from a judgment entered 9 June 2008 consistent with defendant's plea of guilty to possession with intent to sell or deliver MDA/MDMA, felony maintaining a vehicle or dwelling place for using a controlled substance, possession with intent to sell or deliver marijuana, and possession with intent to sell or deliver cocaine. For the reasons stated herein, we affirm the judgment of the trial court.

FACTS
The evidence presented at a suppression hearing held 7 April 2008 indicates that after midnight, on 24 July 2007 Greensboro Police Officers J.S. Ruggiero, A.R. Palmer, and W.C. Tyndall responded to a 9-1-1 call from the Microtel Motel located at 4304 Big Tree Way in Greensboro regarding an odor of marijuana emanating from a third-floor room.
The third floor of the Microtel Motel is an enclosed hallway accessible by stairwell, which required a swipe card to enter. Officer Ruggiero, who was familiar with the odor of marijuana, identified Room 346 as the source of the marijuana odor. "It was very pungent, strong odor." The officers knocked on the door, but there was no answer.
While Officers Palmer and Tyndall were knocking on the door of Room 346, Officer Ruggiero observed a woman approach the stairwell door from inside the stairwell. Officer Ruggiero described her reaction as follows: "her eyes popped open real big and her mouth dropped open . . . . And then she immediately turned and ran down the stairwell and exited the building out of the side stairwell out of the parking lot." Officer Riggiero also described her as moving in a "very, very fast hurry [sic]." Upon observing the woman's reaction, Officer Riggiero notified Officers Tyndall and Palmer of what he had just seen.
Officer Palmer testified that he observed the woman and both he and Officer Tyndall began to walk after her.
[S]he had a good amount of distance between [the officers' positions] and her's and as she was walking away she kept  she repeatedly looked over . . . her left shoulder . . . . We were like, ma'am, stop, can we talk to you, we need to talk to you for a second. And she continued to  to hurriedly walk away. Eventually, as the officers got closer, she stopped. As the officers approached they realized the woman was speaking into a cell phone and telling someone to "hurry up, come to the pool, you know, things of that nature."
Officer Palmer testified to feeling "somewhat threatened," believing that the woman could have been calling someone to come to meet her, thereby creating a safety risk. The woman told the officers that she had gotten into an argument with her boyfriend, had been smoking marijuana, and was paranoid.
Officer Tyndall testified that while Officer Palmer spoke to the woman, he got her name, Nahikulani Kerekes, and verified it as the name of the person renting Room 346. He then told defendant there was an odor of marijuana coming from her room and she needed to return to the motel with them.
As they walked, Officer Tyndall observed car keys in defendant's hand, took the keys, found defendant's vehicle, and wrote down the vehicle tag number. After defendant stated that she did not want her car searched, a K-9 unit was called in. The canine handler, Officer Langholz, informed defendant that she did not have to consent to a search of her vehicle, but he would run his dog around the vehicle and proceed from there. Defendant then consented to a search of the vehicle, and Officer Langholz discovered approximately a gram of marijuana.
Defendant consented to a search of her room after being informed by Officer Tyndall that she had the right to refuse, but if so, he would "lock it down here and . . . [go] down to the Magistrate's Office . . . ." In the room, officers found what they believed to be approximately ten grams of cocaine and twenty-four grams of marijuana, as well as two grams of methylenedioxymethamphetamine (MDMDA) or Ecstacy. Defendant was charged with keeping or maintaining a dwelling house for the purpose of keeping or selling the controlled substances marijuana, cocaine, and MDMA (Ecstacy) in violation of the North Carolina Controlled Substances Act.
Defendant filed a pre-trial motion to suppress the evidence. Following a hearing conducted 8 April 2008, the trial court entered an order which denied defendant's motion to suppress. On 27 May 2008, defendant entered a plea of guilty to possession with intent to sell or deliver MDA/MDMA and maintaining a dwelling to keep controlled substances, possession with intent to sell or deliver marijuana, and possession with intent to sell or deliver cocaine, while preserving her right to appeal. Defendant was sentenced to 6 to 8 months in the custody of the North Carolina Department of Correction; the sentence was suspended and defendant placed on supervised probation for a period of thirty-six months. Defendant appeals.
On appeal, defendant raises one assignment of error. Defendant argues that the trial court erred in denying her motion to suppress all evidence seized on 24 July 2007. We disagree.
Review of a trial court's denial of a motion to suppress is "limited to a determination of whether the trial court's findings of fact are supported by competent evidence, and whether those findings . . . in turn support[] . . . legally correct conclusions of law." State v. Willis, 125 N.C. App. 537, 540, 481 S.E.2d 407, 410 (1997) (citation omitted).
[A]n officer may undertake an investigatory stop of a person, so long as that officer has a reasonable and articulable suspicion, based on objective facts, that the person is engaged in criminal activity. Courts must consider the totality of the circumstances  the whole picture in making the determination as to whether a reasonable suspicion to make an investigatory stop existed at the time the stop was made.
Id. at 541, 481 S.E.2d at 410 (internal citations and quotations omitted). "The court must view the totality of the circumstances from the perspective of a reasonable and cautious police officer." State v. Jordan, 120 N.C. App. 364, 367, 462 S.E.2d 234, 237 (1995) (citation omitted). "[W]hen an individual's presence at a suspected drug area is coupled with evasive actions, police may form, from those actions, the quantum of reasonable suspicion necessary to conduct an investigatory stop." Willis, 125 N.C. App. at 542, 481 S.E.2d at 411 (citation omitted). Flight is also the "consummate act of evasion" and while not "indicative of wrongdoing, . . . it is certainly suggestive of such." State v. Foreman, 351 N.C. 627, 631, 527 S.E.2d 921, 924 (2000) (citation omitted).
Here, the trial court made the following findings of fact:
5. The officers suspected that Defendant was the resident or tenant of Room 346 and therefore may be involved in criminal activity due to defendant's reaction upon seeing the officers knocking on the motel room door coupled with there being no other residents around as well as the hour of the night.
6. As a result of their suspicions, Officers Tyndall and Palmer pursued Defendant to do an investigative stop.
. . .
9. [Defendant] advised the officers that she had "just gotten into an argument with her boyfriend, `I was smoking marijuana and was paranoid.'" During this time, the officers observed that she had a Microtel pass (swipe card) in her hand and asked her her name. A call was made to the motel to determine the identity of the person assigned to Room 346. Defendant's name appeared on the register. They then asked her to accompany them back to the hotel.
. . .
11. In the parking lot, Defendant indicated that she did not want the officers to search her car. Officer Langholtz, who was in control of the K-9 unit, had been called out to the scene. . . . Langholtz advised defendant that she had the right not to consent to a search of her vehicle but he could run the dog around it regardless. She ultimately consented to its search. The search produced a small amount of marijuana.
12. Later, Defendant was taken to Room 346. Once there, the officers asked her if they could search the room. She initially said "No" but when Officer Tyndall told her that they would lock it down until they pursued a search warrant, she consented. Once inside, the controlled substances which are the subject of these criminal charges were seized.
On these facts, the trial court drew the following conclusions:
3. The Court concludes that the officers had a reasonable suspicion, based on objective, specific and articulable facts that criminal action was afoot to pursue and question Defendant. The decision to call for a canine sniff of Defendant's vehicle after it was determined that Defendant admitted that she had smoked marijuana and upon ascertaining that she was the registered occupant for Room 346, which emitted a strong smell of burning or burnt marijuana, was constitutionally permissible.
4. Moreover, the Court finds that based on the above findings of fact and conclusions, Defendant consented to the search of her vehicle and Room 346.
5. Consequently, the seizure of the controlled substances in this case is not constitutionally infirm and Defendant's Motion to Suppress should be denied.
Our review of the record shows that the trial court's findings of fact are supported by competent evidence in the record and that those findings in turn support legally correct conclusions of law. See Wallis, 125 N.C. App. at 540, 481 S.E.2d at 410. Accordingly, defendant's assignment of error is overruled.
Affirmed.
Chief Judge MARTIN and Judge C. HUNTER concur.
Report per Rule 30(e).