NO. COA13-743

NORTH CAROLINA COURT OF APPEALS

Filed: 20 May 2014

STATE OF NORTH CAROLINA

    v.                              Guilford County
                                    Nos. 12 CRS 24372, 74225, 74227
TIYOUN JIMEK JACKSON


    Appeal by Defendant from order entered 10 January 2013 by Judge C.W. Bragg and judgment entered 22 January 2013 by Judge A. Robinson Hassell in Guilford County Superior Court.  Heard in the Court of Appeals 5 February 2014.

    *Attorney General Roy Cooper, by Assistant Attorney General J. Aldean Webster III, for the State.*

    *Appellate Defender Staples Hughes, by Assistant Appellate Defender Constance E. Widenhouse, for Defendant.*

    STEPHENS, Judge.


                    *Procedural and Factual Background*

    In this appeal, Defendant Tiyoun Jimek Jackson challenges the trial court's denial of his motion to suppress evidence discovered by Officer Timothy D. Brown of the Greensboro Police Department following an investigatory stop of Defendant on the night of 9 April 2012.

The order denying Defendant's motion to suppress includes the following pertinent findings of fact:

1. [Officer] Brown is and has been an officer for the Greensboro Police Department since August 15, 2009.

2. Officer Brown based on training and experience is familiar with marijuana and other narcotic drugs.

3. Officer Brown was on duty and in uniform on Monday, April 9, 2012.

4. Prior to April 9, 2012, Officer Brown had on two occasions contact with [D]efendant . . . .

5. On the first occasion, Officer Brown investigating a report of the discharging of a firearm spoke with [D]efendant . . . concerning that incident and recovered from him a stolen firearm.

6. Approximately two months prior to April 9, 2012, Officer Brown was investigating a breaking and entering in the area of Lombardi Street in Greensboro, North Carolina and again came into contact with [D]efendant . . . .

7. . . . [D]efendant . . . was standing with 3 to 4 individuals in the area of the reported breaking and entering.

8. As Officer Brown approached he could smell the odor of marijuana.

9. Officer Brown conducted a search of the individuals including [D]efendant . . . .

10. Officer Brown did find an amount of marijuana, but not on the person of

[D]efendant . . . .

11. On April 9, 2012, Officer Brown was assigned and was patrolling zone 450 in a marked patrol car.

12. Officer Brown at approximately 9:00 pm was patrolling in the vicinity of Kim's Mart located at 2200 Phillips Avenue.

13. Based on Officer Brown's experience as a Greensboro Police Officer he knows that the immediate area outside of Kim's Mart has been the location of hundreds of narcotic investigations some resulting in arrests.

14. Officer Brown has personally made drug arrests in the immediate area of Kim's Mart.

15. Officer Brown is personally aware that hand-to-hand drug transactions have taken place on the sidewalk and street directly adjacent to Kim's Mart as well as inside Kim's Mart.

16. At approximately 9:00 pm on April 9, 2012 Officer Brown saw [D]efendant . . . and Curtis M. Benton standing near the newspaper dispenser outside of Kim's Mart.

17. Two days prior Officer Brown conducted a motor vehicle stop in which Curtis M. Benton was riding.

18. During the motor vehicle stop, Officer Brown noticed the smell of marijuana coming from the car.

19. [D]efendant . . . and Curtis M. Benton upon spotting Officer Brown in his marked patrol car stopped talking and dispersed.

20. [D]efendant . . . went to the East and walked into Kim's Mart and Curtis M. Benton walked away, in the opposite direction, to the West.

21. Officer Brown testified that his training and experience indicate that upon the approach of a law enforcement officer, two individuals engaged in a drug transaction will separate and walk away in opposite directions.

22. Officer Brown continued past Kim's Mart and down Phillips Avenue.

23. After losing sight of [D]efendant . . . and Curtis M. Benton, Officer Brown made a u-turn and headed back up Phillips Avenue toward Kim's Mart.

24. As Officer Brown again approached Kim's Mart, [D]efendant . . . and Curtis M. Benton were again standing in front of Kim's Mart approximately 20 feet from where Officer Brown saw them originally.

25. Officer Brown pulled into the parking lot at Kim's Mart.

26. As Officer Brown was pulling into the parking lot at Kim's Mart, [D]efendant . . . and Curtis M. Benton again separated and began walking away in opposite directions.

27. As [D]efendant . . . was walking away from Kim's Mart, he came within 5-10 feet of Officer Brown's patrol car.

28. Officer Brown wanted to speak with [D]efendant . . . about possible drug activity.

29. Officer Brown asked [D]efendant . . . to place his hands on the patrol car . . . .

30. [D]efendant . . . placed his hands on the front left fender of Officer Brown's patrol car.

Based on these findings, the court concluded "[t]hat based on the totality of the circumstances . . . Officer Brown had a reasonable and articulable suspicion that criminal activity was afoot" and "was legally permitted to make a brief investigatory stop of [D]efendant[.]"  The court further found and concluded that Defendant thereafter "consented to a search of his person by Officer Brown" which led to the discovery of a handgun.[1]

While reserving the right to appeal the denial of his motion, *see* N.C. Gen. Stat. § 15A-979(b) (2013), Defendant pled guilty on 7 January 2013 to possession of a firearm by a felon, possession of a firearm with an altered serial number, and conspiracy to possess with intent to sell or deliver marijuana. The trial court consolidated Defendant's offenses for judgment, suspended a prison sentence of twelve to twenty-four months, and placed him on twenty-four months of supervised probation.

*Appellate Jurisdiction*

---

[1] A subsequent search of Benton yielded "a bag containing a multitude of smaller bags of marijuana."

Defendant has filed a petition for writ of *certiorari*, acknowledging a jurisdictional defect in his notice of appeal, to wit, that he did not initially appeal from the final judgment as required by N.C.R. App. P. 4(b), but rather appealed only from the denial of his suppression motion. *See State v. Miller*, 205 N.C. App. 724, 725, 696 S.E.2d 542, 542 (2010) (dismissing appeal for lack of jurisdiction where the "[d]efendant did file . . . a written notice of appeal from the denial of [the d]efendant's motion to suppress, but [the d]efendant did not appeal from his judgment of conviction") (internal quotation marks omitted). Further, Defendant gave oral notice of appeal thirteen days after the judgment was filed, rather than at trial as required by N.C.R. App. P. 4(a)(1). *See State v. Hammonds*, __ N.C. App. __, __, 720 S.E.2d 820, 823 (2012) (granting writ of *certiorari* after dismissing an appeal for inadequate notice where the defendant's counsel attempted to give oral notice of appeal to the trial court days after the trial and not "at trial" as required by Rule 4).

As a result, Defendant's "right to prosecute an appeal has been lost by [his] failure to take timely action[.]" N.C.R. App. P. 21(a)(1). The State has neither moved to dismiss Defendant's appeal nor opposed our review by writ of *certiorari*.

Accordingly, we grant the requested writ and review Defendant's challenges to the denial of his suppression motion on the merits.

*Motion to Suppress*

Defendant argues that the court erred in denying his motion to suppress because Officer Brown lacked the reasonable articulable suspicion of criminal activity needed to justify an investigatory stop. *See, e.g.*, *State v. Battle*, 109 N.C. App. 367, 370, 427 S.E.2d 156, 158 (1993) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 20 L. Ed. 2d 889, 911 (1968)). Because the stop was unlawful, Defendant further contends that his subsequent consent to Officer Brown's search of his person was invalid. We agree.

In reviewing the denial of a motion to suppress, our task is to determine "whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Biber*, 365 N.C. 162, 167-68, 712 S.E.2d 874, 878 (2011) (citation omitted). Findings not challenged by Defendant "are deemed to be supported by competent evidence and are binding on appeal." *Id.* (citation omitted). We review *de novo* a trial court's conclusion of law that an "officer had reasonable suspicion to detain a

defendant[.]" *State v. Kincaid*, 147 N.C. App. 94, 97, 555 S.E.2d 294, 297 (2001) (citation omitted).

Here, Defendant challenges only finding of fact 5, which states that Officer Brown recovered a stolen gun from Defendant during a prior encounter with Defendant and another individual. The evidence, however, shows that, although Officer Brown did recover a stolen firearm during that encounter, "[D]efendant was not the one that was actually charged in that[.]" This finding of fact is not supported by competent evidence, and, accordingly, we do not consider it in analyzing Defendant's challenge to the trial court's ultimate conclusion that Officer Brown had a reasonable suspicion of criminal activity justifying an investigatory stop.[2]

---

[2] We note that no evidence was introduced and no finding of fact was made that Defendant had any criminal history, much less that Officer Brown was aware of any previous criminal activity by Defendant. Further, even had such evidence been introduced, "a prior criminal record is not, standing alone, sufficient to create reasonable suspicion." *United States v. Black*, 707 F.3d 531, 540 (4th Cir. 2013) (citation and internal quotation marks omitted). As for the findings of fact concerning Benton's criminal history, "[t]here is no reasonable suspicion merely by association." *Id.* at 539; *see also State v. Smith*, __ N.C. App. __, __, 729 S.E.2d 120, 125 (noting that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person") (citations and internal quotation marks omitted), *disc. review denied*, 366 N.C. 396, 735 S.E.2d 190 (2012).

"The Fourth Amendment protects the right of the people against unreasonable searches and seizures. It is applicable to the states through the Due Process Clause of the Fourteenth Amendment. It applies to seizures of the person, including brief investigatory detentions[.]" *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 69-70 (1994) (citations, internal quotation marks, and ellipsis omitted). Accordingly, "[a]n investigatory stop must be justified by 'a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.'" *Id.* at 441, 446 S.E.2d at 70 (quoting *Brown v. Texas*, 443 U.S. 47, 51, 61 L. Ed. 2d 357, 362 (1979)). "A court must consider the totality of the circumstances – the whole picture in determining whether a reasonable suspicion to make an investigatory stop exists." *Id.* (citation and internal quotation marks omitted). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *State v. Williams*, 366 N.C. 110, 116-17, 726 S.E.2d 161, 167 (2012) (citation and internal quotation marks omitted). However, case law has drawn clear limits on what inferences are constitutionally permissible when an officer observes a citizen

in an area known for illegal drug activity or other criminal activity.

"[T]he presence of an individual on a corner specifically known for drug activity and the scene of multiple recent arrests for drugs, *coupled with evasive actions by* [*a*] *defendant*[, is] sufficient to form reasonable suspicion to stop an individual." *State v. Watson*, 119 N.C. App. 395, 398, 458 S.E.2d 519, 522 (1995) (citation omitted; emphasis added). While what constitutes an "evasive action" has never been explicitly defined, a careful review of case law from this State's appellate courts and from the United States Supreme Court reveals that merely walking away from one's companion in the presence of law enforcement officers *cannot* be considered an evasive action which, when coupled with one's presence in an area known for drug sales or other illegal activity, will support the warrantless stop of a citizen.

For example, in *State v. Fleming*,

> at the time [the o]fficer . . . first observed [the] defendant and his companion, they were merely standing in an open area between two apartment buildings [in a "high drug area"]. At this point, they were just watching the group of officers standing on the street and talking. *The officer observed no overt act by [the] defendant at this time nor any contact between [the] defendant and his companion.* Next, the

> officer observed the two men walk between two buildings, out of the open area, toward Rugby Street and then begin walking down the public sidewalk in front of the apartments. These actions were not sufficient to create a reasonable suspicion that [the] defendant was involved in criminal conduct, *it being neither unusual nor suspicious that they chose to walk in a direction which led away from the group of officers*.

106 N.C. App. 165, 170-71, 415 S.E.2d 782, 785 (1992) (emphasis added). Thus, *walking away from law enforcement officers with one's companion after watching law enforcement officers* is not suspicious and, even when coupled with being present in an area known for drugs, cannot create the reasonable suspicion needed to justify a stop. *Id.; see also In re J.L.B.M.*, 176 N.C. App. 613, 620, 627 S.E.2d 239, 245 (2006) (holding there was no reasonable suspicion where an officer "relied solely on the dispatch that there was a suspicious person at the Exxon gas station, that the juvenile matched the 'Hispanic male' description of the suspicious person, that the juvenile was wearing baggy clothes, and that the juvenile chose to walk away from the patrol car").

> In *Brown*, two police officers observed [the] defendant and another person walking away from one another in an alley. The officers drove into the alley, approached [the] defendant and asked him to identify himself and to explain what he was doing there. [The d]efendant refused and told the

> officers they had no right to stop him. One of the officers told [the] defendant he was in a high drug area; the other officer then frisked [the] defendant and found nothing. At trial, one officer testified that he had stopped [the] defendant because the situation looked suspicious and he had never seen that subject in that area before. Further, the area where [the] defendant was stopped had a high incidence of drug traffic. The officers never claimed to suspect [the] defendant of any specific misconduct, nor did they have any reason to believe [the] defendant was armed.

*Fleming*, 106 N.C. App. at 170, 415 S.E.2d at 785 (internal quotation marks omitted) (discussing the circumstances present in *Brown*, which did *not* create the reasonable suspicion needed to sustain a stop). Thus, *walking away from one's companion in the presence of law enforcement officers*, even when coupled with being present in an area known for drugs, cannot create reasonable suspicion.

In contrast, in *State v. Butler*, the circumstances relevant to a determination of reasonable suspicion were:

> 1) [the] defendant was seen in the midst of a group of people congregated on a corner known as a "drug hole"; 2) [the officer] had had the corner under daily surveillance for several months; 3) [the officer] knew this corner to be a center of drug activity because he had made four to six drug-related arrests there in the past six months; 4) [the officer] was aware of other arrests there as well; 5) [the] defendant was a stranger to the officers; 6) upon making eye

> contact with the uniformed officers, [the] defendant immediately moved away, behavior that is evidence of flight; and 7) it was [the officer's] experience that people involved in drug traffic are often armed.

331 N.C. 227, 233, 415 S.E.2d 719, 722 (1992). The Court specifically distinguished the circumstances in *Butler* from those in *Brown* by noting "an additional circumstance — [the] defendant's immediately leaving the corner and walking away from the officers *after making eye contact with them.*" *Id.* at 234, 415 S.E.2d at 722-23 (emphasis added). The Court construed these actions as "behavior that is evidence of *flight*[.]" *Id.* at 233, 415 S.E.2d at 722 (emphasis added). Thus, making eye contact with an officer before immediately turning and walking away in a manner which suggests an attempt to flee, when coupled with being present in an area known for drugs, *will* establish reasonable suspicion to sustain a stop.[3]

---

[3] In contrast, simply observing law enforcement officers before walking away from them does *not* support a determination of reasonable suspicion. *See Fleming*, 106 N.C. App. at 170, 415 S.E.2d at 785 (finding no reasonable suspicion where the defendant and his companion "were just watching the group of officers standing on the street and talking" before walking away). Here, finding of fact 19 simply states that Defendant and his companion dispersed "upon spotting" Officer Brown in his marked patrol car. No finding of fact states that Defendant made eye contact with Officer Brown, and no testimony at the suppression hearing would have supported such a finding. Indeed, Officer Brown testified that, at the time he saw Defendant and his companion outside Kim's Mart, it was "dark"

In *Watson*, upon the approach of law enforcement officers, the "defendant immediately attempted to enter the convenience store to avoid detention . . . [and] made evasive maneuvers to avoid detection, *i.e.*, putting the drugs in his mouth, attempting to swallow the drugs by drinking Coca-Cola and attempting to go into the store[.]" 119 N.C. App. at 398, 458 S.E.2d at 522 (italics added). The defendant's attempt to swallow drugs, coupled with his presence in an area known for drugs, created reasonable suspicion for a stop. *Id.* In *State v. Sutton*, the defendant's evasive action was "clinch[ing]" something in a waistband and posturing to conceal an item from a nearby officer. __ N.C. App. __, __, 754 S.E.2d 464, 471-72 (2014) ("While many of the facts in *Fleming* are the same or similar to this case, in *Fleming*, the defendant did not make any overt actions, and here [the] defendant did when he used his right hand to grab his waistband to clinch an item."). Similarly, in *State v. Willis*, the circumstances supported a determination of reasonable suspicion when a defendant "left a suspected drug house just before [a] search warrant was executed[,] . . . [took] evasive action when he knew he was

---

and that, "as soon as *they observed my police vehicle*, you had [D]efendant . . . walk east, as if he was walking into the store. And then [his companion] actually walked west, away from the store."

being followed[,] . . . [and] exhibited nervous behavior." 125 N.C. App. 537, 542, 481 S.E.2d 407, 411 (1997). Thus, *overt, evasive behaviors* such as attempting to destroy contraband, behaving nervously while being followed, or concealing items from the view of officers, when coupled with being present in high crime areas, *can* create reasonable suspicion.

Here, the unchallenged findings of fact reveal that the following circumstances led to Officer Brown's stop of Defendant: (1) it was approximately 9:00 p.m.;[4] (2) the area around Kim's Mart was known for illegal drug sales and had been the location of numerous drug-related arrests; (3) Defendant and a companion were standing together in front of Kim's Mart; (4) when the men saw Officer Brown's car, they began walking in opposite directions and Defendant entered Kim's Mart; (5) when

---

[4] The time of the stop, 9:00 p.m., cannot be considered a suspicious time to be at Kim's Mart, since that establishment was apparently open for business. *See, e.g.*, *State v. Rinck*, 303 N.C. 551, 555-60, 280 S.E.2d 912, 916-20 (1981) (holding that circumstances supporting a reasonable basis for a stop included the defendants walking along a road at an "unusual hour" of approximately 1:35 a.m.); *State v. Blackstock*, 165 N.C. App. 50, 59, 598 S.E.2d 412, 418 (2004), *appeal dismissed and disc. review denied*, 359 N.C. 283, 610 S.E.2d 208 (2005) (holding that reasonable suspicion existed where the defendant and a companion were observed loitering at a closed shopping center shortly before midnight, and, upon seeing law enforcement officers, hurriedly returned to their vehicle, which was parked out of general public view).

Officer Brown turned his car around and returned, the two men were again standing together in front of Kim's Mart; and (6) when Officer Brown pulled into the store parking lot, Defendant and his companion again walked away from each other, with Defendant walking toward Officer Brown.

Thus, the totality of the relevant circumstances here consists of nothing more than (1) being in an area known for drug sales and (2) walking away from a companion in the presence of an officer twice. Defendant's presence with a companion at Kim's Mart, a location known for drug sales, cannot create reasonable suspicion to support a stop. *See Brown*, 443 U.S. at 52, 61 L. Ed. 2dat 365 ("There is no indication in the record that it was unusual for people to be in the alley. The fact that [the defendant] was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that [the defendant] himself was engaged in criminal conduct. In short, the [defendant's] activity was no different from the activity of other pedestrians in that neighborhood."). As discussed *supra*, that Defendant walked away from his companion after seeing Officer Brown, even in a known drug area, cannot create reasonable suspicion. *See Fleming*, 106 N.C. App. at 170, 415 S.E.2d at 785. Nothing in the findings of fact suggests that

Defendant took any "evasive" action or engaged in behavior that could be construed as flight such as trying to swallow drugs, *see Watson*, 119 N.C. App. at 398, 458 S.E.2d at 522; concealing something from Officer Brown, *see Sutton*, __ N.C. App. at __, 754 S.E.2d at 466; making eye contact with the officer and then immediately walking away, *see Butler*, 331 N.C. at 234, 415 S.E.2d at 722-23; or behaving nervously while being followed. *See Willis*, 125 N.C. App. at 542, 481 S.E.2d at 411.

On the contrary, Defendant's actions were anything but evasive or evidence of flight. Finding of fact 27 notes that, as Defendant "was walking away from Kim's Mart, he came within 5-10 feet of . . . Brown's patrol car." Here, as in *Fleming*, Officer Brown observed no overt act by Defendant nor any contact between Defendant and his companion that would suggest Defendant was engaged in, or about to engage in, criminal activity of any kind, including illegal drug activity. He simply saw two young men standing in front of a convenience store move away from each other twice. In sum, the United States Supreme Court, our own North Carolina Supreme Court, and previous panels of this Court have consistently held that these circumstances cannot create the reasonable suspicion required to permit police intrusion upon the liberty of our State's citizens.

Having determined that the initial investigatory stop was unlawful, we need not consider whether Defendant's consent to Officer Brown's search of his person was valid. *See State v. Guevara*, 349 N.C. 243, 249, 506 S.E.2d 711, 716 (1998), *cert. denied*, 526 U.S. 1133, 143 L. Ed. 2d 1013 (1999) (noting that evidence obtained as the result of illegal police conduct must be suppressed). The order denying Defendant's motion to suppress is reversed and the judgment entered upon Defendant's guilty plea is vacated.

REVERSED and VACATED.

Judge BRYANT concurs.

Judge DILLON dissents in a separate opinion.

NO. COA13-743

NORTH CAROLINA COURT OF APPEALS

Filed: 20 May 2014

STATE OF NORTH CAROLINA

    v.

TIYOUN JIMEK JACKSON

Guilford County
Nos. 12 CRS 24372
12 CRS 74225, 74227


DILLON, Judge, dissenting.


I agree with the majority that the trial court's Finding of Fact 5 – the only finding challenged by Defendant – is not supported by the evidence of record. However, because I believe that the remaining findings are sufficient to support the court's conclusion that Officer Brown possessed the reasonable suspicion requisite to justify an investigatory stop under the circumstances, I respectfully dissent.

As the majority points out, we have held that "the presence of an individual on a corner specifically known for drug activity and the scene of multiple recent arrests for drugs, coupled with evasive actions by [a] defendant[,] are sufficient to form reasonable suspicion to stop an individual." *State v. Watson*, 119 N.C. App. 395, 398, 458 S.E.2d 519, 522 (1995). Defendant does not dispute the trial court's findings that Officer Brown was aware that Kim's Mart – where the stop in

question occurred – was a high-crime area, where numerous drug transactions had taken place and where Officer Brown had made a number of drug-related arrests. The sole issue, therefore, is whether the trial court's remaining findings are sufficient to establish that Defendant engaged in "evasive actions" sufficient to give rise to reasonable suspicion.

This court has held, as the majority points out, that an individual's action in merely walking away from one's companion cannot be considered evasive action sufficient to form reasonable suspicion. *State v. Fleming*, 106 N.C. App. 165, 171, 415 S.E.2d 782, 785 (1992). However, as the majority also points out, our Supreme Court has held that there is reasonable suspicion to justify an investigatory stop where an individual who walks away from his companion in a high-crime area does so "*after making eye contact*" with a police officer. *State v. Butler*, 331 N.C. 227, 234, 415 S.E.2d 719, 723 (1992) (emphasis added).

I believe that Defendant's actions here were more evasive than those of the defendant in *Butler*; and, accordingly, I believe that we are compelled to conclude that Officer Brown conducted a valid stop under the circumstances. Unlike *Fleming*, where the defendant simply walked away from the police, here

Defendant engaged in a *sequence of suspicious behaviors* upon observing Officer Brown's patrol car. For instance, the trial court found that "Defendant . . . and [his companion] *upon spotting Officer Brown* in his marked patrol car stopped talking and dispersed [from the front of Kim's Mart]." (Emphasis added.) This unchallenged finding is comparable to the key finding in *Butler* that the defendant "upon making eye contact with the uniformed officers . . . moved away." *Butler*, 331 N.C. at 233, 415 S.E.2d at 722. Additionally, the trial court found that Officer Brown continued driving past Kim's Mart and lost sight of Defendant and his companion before executing a U-turn and driving back toward Kim's Mart, where he observed Defendant and his companion once again standing together. Finally, the trial court found that when Officer Brown pulled into the Kim's Mart parking lot, Defendant and his companion *again* dispersed.

Any one of Defendant's actions, standing alone, might not satisfy the requirements of the Fourth Amendment to conduct a *Terry* stop. However, I believe that Defendant's actions, when considered in their totality, namely: (1) that Defendant and his companion split up upon spotting Officer Brown's patrol car drive by Kim's Mart the first time; (2) that Defendant and his companion reconvened once Officer Brown was out of site; and (3)

that Defendant and his companion split up a second time upon observing Officer Brown driving back towards Kim's Mart – were certainly more evasive than the actions of the defendant in *Butler*.  Accordingly, I believe that Officer Brown conducted a valid investigatory stop of Defendant in the present case, and I would affirm the trial court on this basis.