An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-629

Filed 3 June 2026

Gaston County, No. 23CR240525-350

STATE OF NORTH CAROLINA

v.

DEMACEO RAEKWON BRICE, Defendant.

Appeal by Defendant from judgments entered 27 August 2024 by Judge Justin N. Davis in Gaston County Superior Court. Heard in the Court of Appeals 12 February 2026.

> *Attorney General Jeff Jackson, by Assistant Attorney General Scott A. Conklin, for the State.*

> *Lebedev Law Services, by Anton M. Lebedev, for Defendant.*

GRIFFIN, Judge.

Defendant Demaceo Raekwon Brice appeals from the trial court's judgments entered after a jury found him guilty of maintaining a dwelling for controlled substances and resisting an officer. Defendant argues the trial court erred by admitting a Department of Social Services report because it should have been excluded under Rule 403 of the North Carolina Rules of Evidence, it was inadmissible

hearsay, and its admission violated the Confrontation Clauses of the North Carolina and United States Constitutions. Defendant also argues the trial court erred in denying his motions to dismiss the charges of maintaining a dwelling and resisting an officer. We hold the trial court did not err.

## I.  Factual and Procedural Background

In January of 2023, officers with the Gastonia Police Department received complaints of narcotics coming to and from a house on North Ransom Street in Gastonia, North Carolina. On 21 February 2023, officers began conducting traffic stops on vehicles coming from the house. These stops yielded the discovery of suspected narcotics. That same day, the officers secured a search warrant for the house located at 1213 North Ransom Street.

Several officers, including Officers Warlick and Barksdale, arrived at the house in a caravan of four to five marked patrol cars. At least one of the patrol cars had its blue lights on when they arrived. Officer Warlick pulled into the driveway and stopped his patrol car across it, with the objective of blocking any potential fleeing vehicles. As the officers arrived, they saw a dark-colored SUV backed up to the fence of the residence. The headlights of the SUV suddenly turned on and it began to rapidly accelerate towards Officer Warlick's patrol car. The SUV sped past the officers, narrowly missing Officer Warlick's patrol car. The SUV then drove through the neighboring yard and onto the road. Four of the officers on the scene identified

Defendant as the driver of the SUV. Detective Barksdale testified that several of the officers then attempted to stop the SUV but were unable to do so.

The officers proceeded to execute the search warrant at 1213 North Ransom Street. As Detective Barksdale and two other officers approached the residence, two females and several children exited from the side door. The officers then entered the residence. While searching one of the bedrooms, officers found pistol ammunition, a large amount of cash, and 248.07 grams of cocaine in a vacuum-sealed bag. In that bedroom, there were also letters hanging on the wall that spelled out "Mr. and Mrs. Brice." A blanket was hung on a nearby wall that had pictures of Defendant, a female, and a child. Officers also found a Department of Social Services report in that bedroom. The report was dated 19 January 2023. The report stated the caregivers of a child were Defendant and Jamie Hill. The report also stated that "mom[, Jamie Hill,] was positive for cocaine and baby's blood cord was positive for cocaine."

Officers also found marijuana during their search of the residence. Additional investigation by the officers revealed that Jamie Hill paid the electricity bill for the residence. Additionally, the officers determined that the SUV driven by Defendant was a rental and the other female at the home was the one who rented the SUV. The officers were able to locate and search the SUV by using a tracker installed by the rental company. The officers did not find any illegal contraband while searching the SUV.

A Gaston County grand jury indicted Defendant on 6 March 2023 for multiple criminal offenses stemming from their search of 1213 North Ransom Street, including feloniously maintaining a dwelling for controlled substances and resisting a public officer. The matter came on for trial during the 21 August 2024 criminal session of Gaston County Superior Court. The State introduced into evidence the DSS report found in a bedroom during their search. Defendant objected to introduction of the DSS report and the trial court overruled Defendant's objection. At the close of the State's evidence, Defendant moved to dismiss the charges of maintaining a dwelling and resisting a public officer for insufficiency of the evidence. The trial court denied both motions. The jury found Defendant guilty of maintaining a dwelling for controlled substances and resisting a public officer. Defendant timely appeals.

## II.    Analysis

Defendant argues the trial court erred by admitting the DSS report into evidence and by denying his motions to dismiss the charges of maintaining a dwelling and resisting a public officer for insufficiency of the evidence.

### A. DSS Report

At trial, the State introduced the DSS report found in the bedroom of the residence. Defendant contends the trial court erred by admitting the report because it was unfairly prejudicial, because it was inadmissible hearsay, and because its admission violated the Confrontation Clause.

#### 1.  *Risk of Unfair Prejudice*

The DSS report listed Defendant and a woman named Jamie Hill as the caregivers of a child. The report also stated that "mom[, Jamie Hill,] was positive for cocaine and [the child's] blood cord was positive for cocaine." The State offered the DSS report to show Defendant resided at 1213 North Ransom Street because it was a sensitive document that a reasonable person would keep at their residence. Defendant contends the substance of the DSS report was inflammatory information unrelated to his present charges and should have been excluded as unduly prejudicial under Rule 403.

Rule 403 of the North Carolina Rules of Evidence provides the trial court with discretion to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." N.C. R. Evid. 403. Evidence the State seeks to present against a defendant will, more often than not, be prejudicial; "to be excluded under Rule 403, the probative value of the evidence must not only be outweighed by the danger of unfair prejudice, it must be substantially outweighed." *State v. Lyons*, 340 N.C. 646, 669, 459 S.E.2d 770, 783 (1995). "The exclusion of evidence under Rule 403 is a matter generally left to the sound discretion of the trial court, which is left undisturbed unless the trial court's ruling is manifestly unsupported by reason or is so arbitrary it could not have been the result of a reasoned decision." *State v. Badgett*, 361 N.C. 234, 244–45, 644 S.E.2d 206, 212–13 (2007) (citation modified).

We cannot say the probative value of the DSS report as evidence of Defendant's

residence was substantially outweighed by the risk the jury would associate Defendant with the drug use described therein. The statement within the report stated the child's mom, Jamie Hill, tested positive for cocaine, not Defendant. The State did not argue to the jury that Jamie Hill received the cocaine from Defendant or that Defendant was otherwise responsible for her use of cocaine. The State's argument was only that the DSS report showed Defendant resided in the bedroom in which it was found. The trial court did not abuse its discretion by admitting the DSS report into evidence.

### 2. *Hearsay and the Confrontation Clause*

Defendant also asserts the trial court erred in admitting the report as it constituted inadmissible hearsay. At trial, Defendant did not object on hearsay grounds, depriving the trial court of an opportunity to rule on those grounds; thus, Defendant did not properly preserve hearsay grounds for our review. *See State v. Golphin*, 352 N.C. 364, 465, 533 S.E.2d 168, 234 (2000); N.C. R. App. P. 10(a)(1). Because the alleged evidentiary error was unpreserved, this Court will review only for plain error. *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). The burden of proof is on the defendant to show the error rose to the level of plain error. *State v. Lawrence,* 365 N.C. 506, 516, 723 S.E.2d 326, 333 (2012). The defendant must show that a fundamental error occurred at trial so prejudicial that the error had a probable impact on the jury's finding the defendant guilty. *Id.* at 518, 723 S.E.2d at 334. Our Courts have specified plain error should be used "cautiously and

only in the exceptional case." *Odom*, 307 N.C. at 660, 300 S.E.2d at 378.

We first evaluate whether an error occurred. The North Carolina Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. R. Evid. 801(c). However, out-of-court statements offered for purposes other than to prove the truth of the matter asserted are not considered hearsay. *State v. Call*, 349 N.C. 382, 409, 508 S.E.2d 496, 513 (1998). This Court has held that a "[d]efendant's name and address, written or printed on an envelope or its contents, is neither a written assertion nor conduct which is intended as an assertion and, therefore, is not hearsay evidence." *State v. Peek*, 89 N.C. App. 123, 125, 365 S.E.2d 320, 322 (1988). Rather, a name on an envelope or the content inside shows the creator's belief that the address and information included belong or pertain to the named recipient. *Id.*

Here, the State did not offer the DSS report to prove the truth of the information contained within the report. The State did not offer this document to prove that the mother and child tested positive for cocaine, or any relationship of Defendant to the facts alleged. Rather, the State offered the DSS report as a kind of sensitive document that a reasonable person would keep in their home, as evidence that Defendant lived at the residence, without regard to whether the allegations within the report were true. The mere placement of Defendant's name on the DSS report is akin to the placement of a recipient's name on the contents of an envelope,

asserting only the report creator's belief that Defendant was involved in the matters described therein. *See id.* The DSS report was not inadmissible hearsay when admitted for this non-truth purpose.

Defendant also argues the trial court erred by admitting the DSS report because he did not have the opportunity to cross-examine the individual who created the report pursuant to the Confrontation Clauses of both the United States Constitution and the North Carolina Constitution. Defendant did not object on this ground during trial, and we will therefore review only for plain error. *Odom*, 307 N.C. at 660, 300 S.E.2d at 378.

We once again first assess whether an error occurred. The Confrontation Clause of each Constitution prohibits the admission of testimonial statements by a witness who does not testify at trial unless (1) the witness is unavailable and (2) the defendant had a prior opportunity to cross-examine that witness. *Crawford v. Washington*, 541 U.S. 36, 59 (2004); U.S. Const. amend. XI; N.C. Const. art. 1, § 23. However, the Clause does not apply when a statement is offered for a purpose other than proving the truth of the matter asserted and thereby not hearsay. *Crawford*, 541 U.S. at 59, n. 9. "To implicate the Confrontation Clause, a statement must be hearsay ("for the truth") and it must be testimonial—and those two issues are separate from each other." *Smith v. Arizona*, 602 U.S. 779, 800 (2024).

Here, the Confrontation Clause was not violated because the contents of the DSS report were not hearsay offered for the truth of the matter asserted therein. The

State offered the DSS report only to support its contention that Defendant resided at 1213 North Ransom Street because the report was a sensitive document one would keep at their personal residence. The trial court did not err in violation of the Confrontation Clause, much less commit plain error, by admitting the DSS report.

## B. Maintaining a Dwelling

Defendant next argues the trial court erred in denying his motion to dismiss the maintaining a dwelling charge for insufficiency of the evidence. When deciding a motion to dismiss, the trial court must evaluate whether the State presented substantial evidence of each essential element of the crime and the defendant was the perpetrator of that crime. *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). Substantial evidence is any relevant evidence that a reasonable person could accept as adequate to support a conclusion. *State v. Ferebee*, 177 N.C. App. 785, 787, 630 S.E.2d 460, 462 (2006). The evidence must be viewed in the light most favorable to the State, who is entitled to the benefit of all reasonable inferences that may be drawn from the evidence. *State v. Robinson*, 355 N.C. 320, 336, 561 S.E.2d 245, 256 (2002).

The crime of keeping or maintaining a dwelling deems it unlawful for any person "[t]o knowingly keep or maintain any . . . dwelling house . . . , which is resorted to by persons using controlled substances . . . for the purpose of using such substances, or which is used for the keeping or selling of the same in violation of this Article." N.C. Gen. Stat. § 90-108(a)(7) (2023). To determine whether the defendant

"maintained a dwelling" under this statute, our Courts weigh evidence regarding the defendant's active presence at and interest in the property. *State v. Bowens*, 140 N.C. App. 217, 221, 535 S.E.2d 870, 873 (2000). Evidence of occupancy alone is not enough to constitute maintaining a dwelling, but evidence of residency is in itself sufficient. *State v. Spencer*, 192 N.C. App. 143, 148, 664 S.E.2d 601, 605 (2008) (citations omitted). "Proof of residency may . . . be shown through circumstantial evidence." *State v. Rowland*, 298 N.C. App. 274, 277, 913 S.E.2d 467, 470 (2025) (citation omitted).

Defendant contends the State's "evidence at most showed that [Defendant] was a temporary occupant" of 1213 North Ransom Street because the State presented no evidence that Defendant owned or made meaningful contributions to the upkeep of the property. We disagree. The State introduced evidence showing pictures on the wall of a bedroom in the residence depicting Defendant, Jamie Hill, and a child, and large letters on the wall spelling out "Mr. and Mrs. Brice." The officer found the DSS report including the names of Defendant and the child in that same bedroom. Viewing this evidence in the light most favorable to the State, a reasonable person could infer that Defendant resided in this bedroom and otherwise stored important paperwork there. The trial court did not err by denying Defendant's motion to dismiss the charge of maintaining a dwelling for insufficiency of the evidence.

## C. Resisting an Officer

Defendant next argues the trial court erred by denying his motion to dismiss

the charge of resisting an officer for insufficiency of the evidence.

"If any person shall willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge a duty of his office, he shall be guilty of a Class 2 misdemeanor." N.C. Gen. Stat. § 14-223 (2023). This offense requires proof of the following elements: (1) a public officer was the victim; (2) the defendant knew or reasonably should have known that the victim was a public officer; (3) the public officer was performing or attempting to perform an official duty; (4) the defendant's actions interfered with that duty or attempt to perform the duty; and (5) the defendant acted willfully and without legal justification or excuse. *State v. Washington*, 193 N.C. App. 670, 679, 668 S.E.2d 622, 628 (2008).

Defendant argues the evidence did not show he willfully resisted the officers executing the search warrant. Defendant argues though he "was likely aware of the officers' presence, there is no indication he was aware of the search warrant or the officers' intent to detain him." *See id.* Further, Defendant contends, he was legally justified to leave the residence because the officers had "a search warrant on the residence, not an arrest warrant for [Defendant] or an investigatory stop of his vehicle."

Defendant's argument relies on this Court's analysis in *State v. Richardson*. In *Richardson*, law enforcement executed a search warrant on a residence. *State v. Richardson*, 202 N.C. App. 570, 571, 689 S.E.2d 188, 190 (2010). The defendant ran out the back door, where officers stopped and arrested him. *Id.* The evidence showed

the defendant did not reside at the residence. *Id.* at 572, 689 S.E.2d at 190. At trial, the defendant moved to dismiss the charge of resisting an officer, which the court denied. *Id.* On appeal, this Court held the trial court erred in denying the defendant's motion to dismiss and vacated his conviction. *Id.* at 575, 689 S.E.2d at 192. This Court reasoned that the officers had a search warrant, not an arrest warrant for the defendant, and the defendant did not live at the residence subject to the search warrant. *Id.* at 575, 689 S.E.2d at 192. The Court in *Richardson* held: "We find no authority for the State's presumption that a person whose property is not the subject of a search warrant may not peacefully leave the premises after the police knock and announce if the police have not asked him to stay." *Id.*

*Richardson* is distinguishable from the case before us. This Court's decision in *Richardson* turned on the fact the defendant was not a resident of the residence subject to the search warrant. *Id.* Here, the evidence was sufficient to allow a reasonable person to conclude Defendant resided at the residence subject to the search warrant. Further, Defendant's hazardous egress from the property, nearly colliding with a patrol vehicle as he drove across a neighboring yard, is not comparable to the *Richardson* defendant's peaceful exit from the residence there. *Richardson* is therefore inapplicable to the facts of this case.

In addition to discussing *Richardson*, Defendant asserts "the absence of any directive to remain or halt undermines the willfulness element, as [Defendant] could not have deliberately obstructed a duty of which he was unaware." This argument

must fail because officers were unable to verbally command Defendant to halt, or to issue any other command. As several patrol cars arrived at the house, some of which with their lights on, Defendant immediately fled from the premises in the SUV and cut through a neighbor's yard to navigate past the patrol cars blocking the driveway. A reasonable person seeing law enforcement blocking a driveway would infer that law enforcement was giving a nonverbal directive that cars are not allowed to leave. Without an opportunity to communicate verbally with Defendant, the officers used the nonverbal directives available to them, which Defendant ignored. Evidence also showed the officers attempted to stop Defendant's SUV after he fled but were unable to do so. Through these actions, law enforcement conveyed their intention to detain Defendant, and Defendant resisted their efforts. Defendant cannot argue against the willfulness element by fleeing before a verbal directive could be given. Accordingly, we hold the trial court did not err by denying Defendant's motion to dismiss the charge of resisting an officer for insufficiency of the evidence.

## III. Conclusion

For the foregoing reasons, we hold the trial court did not err in its admission of evidence or in denying Defendant's motions to dismiss.

NO ERROR.

Judges STROUD and MURRY concur.

Report per Rule 30(e).